[No. 15844. Department One. June 22, 1921.]

*In the Matter of the Estate of* WILLIAM H. WATKINS.[1]

WILLS (20)—VALIDITY—INTENT—UNDUE INFLUENCE—EVIDENCE—SUFFICIENCY. A will which was sufficient as to substance and execution would not be invalidated by reason of having been made as part of the ritualistic ceremony of a secret order, where it sufficiently appears from the testimony of the surviving witness that it was executed by the maker at the time with testamentary intent, notwithstanding a disagreement among members of the order as to whether the making of a will was required of candidates (BRIDGES and MACKINTOSH, JJ., dissenting).

Appeal from a judgment of the superior court for Adams county, Hill, J., entered September 25, 1919, dismissing a will contest. Affirmed.

*Lee & Kimball* and *W. O. Lewis,* for appellants.

*Adams & Miller* and *Miles F. Egbers,* for respondents.

[1]Reported in 198 Pac. 721.

FULLERTON, J.—William Henry Watkins died in Adams county in this state on December 10, 1916, leaving estate therein consisting of real and personal property. He left as his heirs at law four children, two sons and two daughters, each of whom had reached the age of majority. At the time of his death no will was found, and one John C. Allen was appointed administrator of the estate. The administrator proceeded with the administration and in due time reported the estate as ready for distribution. At this time one of the daughters appeared by petition, producing what she alleged to be a will of the decedent, and asked that the instrument be admitted to probate as his last will and testament and that the property of the estate be distributed according to the terms thereof. A time was fixed by the court for hearing the petition, at which time proofs were submitted of its due execution and an order entered admitting it to probate. This was done over the protest of certain of the other heirs of the estate and proceedings were immediately instituted by them in contest of the will. The contest was subsequently heard, resulting in an order sustaining the will and a dismissal of the contest proceedings.

The purported will was found in the archives of a secret society known generally as the Masonic order. As presented here, it is a sheet of paper folded so as to form four pages. Heading the first page were printed instructions in these words:

"Write, now, in good faith, your last will and testament precisely as if you were about immediately to be engaged in battle and expected to fall in the action."

Following this were the printed words:

"In the name of God, Amen! I, ................., being of sound mind and memory, but knowing the uncertainty of human life, do now make and publish this, my last will and testament, that is to say;"

The instrument was completed so as to take the form of a will by Mr. Watkins himself. He wrote his name in the blank space left in the printed form, and wrote underneath it the following:

"I wish my property, whatever it may be, divided into five parts and my youngest daughter to receive two parts, and the other to the other three children.
                        "W. H. WATKINS."

The instrument bears the names of two persons, signing in the place usually accorded witnesses. The second page was blank. On the third page there was printed certain admonitory directions, followed by a series of questions to which answers were required. These were followed by an obligation, signed by Watkins, in which he promised, among other things that he would "never improperly make known the mode of my admission into this degree." The fourth page was blank. The matter on the third page does not purport to have relation to the part comprising the will. In form the instrument was sufficient to constitute a duly executed will, provable as such under the laws of this state.

It developed in the testimony that the instrument was executed on November 16, 1903, some thirteen years prior to the death of Mr. Watkins, at a time when there was being conferred on him a degree of the secret order mentioned. It was testified by members of the order that the making of a will was a part of the ceremony of the particular degree, required of all candidates who had not theretofore made a will. The members of the order testifying did not however, altogether agree as to the purpose of the requirement. One testified that it was a ceremonial only, a part of the ritualistic work, and not intended as a testamentary disposition of property. Two others testified to a contrary view; the substance of their testimony

being that all members of the order who had taken this degree were expected to die testate, and that while the will executed on the particular occasion, like all other wills, was subject to modification by subsequent codicils or revocation by subsequently executed wills, it is intended and regarded as testamentary.

There would seem to be no legal objection to regarding a will so executed as a valid will. The time, place or circumstance of the execution of an instrument in form testamentary are material only as they bear upon the question of intent. It is well settled, of course, that an instrument offered for probate as a will, however formal may have been its execution, will not be admitted to probate as such unless it was executed by the testator with testamentary intent. If it is executed under compulsion, undue influence, as a part of a ceremonial, for the purpose of deception, or for the purpose of perpetrating a jest, it is not a will, but the fact that it was executed at a time when the testator was taking a degree in a secret order is not alone sufficient to reject it as a valid testamentary disposition of property. A valid will may be made under these circumstances as well as under any other. The question being one of intent, if it fairly appears that the testator intended it as his will, there is no valid legal reason because of the place of its execution why the courts should not give it effect as such.

It remains to inquire whether the testator intended the instrument to be his will and testament. The evidence on the question is somewhat meager, but we think the decided weight of the evidence is that he so regarded it. The surviving witness to the will testified that it was executed with testamentary intent, and that the testator at the time of its execution declared it to be his last will and testament. His evidence was

7—116 WASH.

taken by deposition to which were attached cross-interrogatories. To one of these, inquiring whether the testator talked with him about it or to any one else in his presence concerning it, the witness answered: "All he said was that if he never made another will that one would do. I can't remember that he said anything else."

It appeared, however, from the testimony of another witness that at the close of the ceremony Mr. Watkins remarked, "that is quite a josh." It is argued that this shows that Mr. Watkins himself did not regard the making of the will to be anything more than a ceremonial. But we think the witness' testimony as a whole shows that the remark was made with reference to the requirement that a will be executed rather than to the instrument executed as a will; a part of the witness' further testimony being the following:

"Q. Was there anything said by Mr. Watkins as to whether or not he was executing a will? A. Yes, sir; it was expressly understood that he was executing a will. Q. What, if anything, did he say with relation to having made a will? A. Well, he said that that was his will; that he signed that as his will, his last will and testament. . . . . As I say, it is the custom that the request be made and complied with by every candidate. He is asked if he has made a will, and, if he has not he is requested to do so, and he has to do so before he can proceed any further."

The disagreement among the members of the order as to the purport of the requirement is not of moment. The question in each case must necessarily be, what was the intent of the particular individual, and here, we think, the trial judge correctly determined that the deceased executed this instrument intending it to be his last will and testament.

The judgment is affirmed.

PARKER, C. J., and HOLCOMB, J., concur.

BRIDGES, J. (dissenting)—I am unable to concur in the foregoing opinion. I readily agree with the correctness of the statement therein that no instrument should be held to be a last will and testament unless the proof shows the intent of the maker that it should be such. But mere preponderance of evidence should not be sufficient; the evidence should be such as to clearly, convincingly and satisfactorily establish the intention. I do not think the testimony in this case is of the class indicated. It fails to convince me that the maker of the purported will intended it to be a final disposition of property. The making of a will is an important and solemn business; the testator usually deliberates the subject, and when the will is made he keeps it in his possession or under his control. He generally chooses his own time to make it and his witnesses to it. It seems to me that all of the conditions and circumstances surrounding the making of this instrument argue with great force against the idea that it was made with that seriousness and solemnity with which wills are customarily made. As pointed out by the court's opinion, it was made as a part of the ritualistic work of a secret society into which the deceased was being initiated. One witness testified that the deceased, at the time of making the instrument, said he thought it was "quite a josh." The testimony also conclusively shows that at least some of the members of the society who had previously been initiated into it, and who probably had been required to make similar purported wills, believed that it was not intended that the instrument so made was to be considered a final will and testament. The deceased here may have been of like mind. This purported will was made some thirteen years prior to decedent's death, during all of which time it was lodged in the secret archives of the society.

I greatly fear that the holding of the court in this case will lead to the presentation and probation of many instruments in the form of wills which were never intended to be such. I frankly concede that a valid will might be made under the circumstances this instrument was made, but certainly the testimony of the intention of the testator should be much stronger than is shown in this case, to authorize the probation of it as a final disposition of property. I think the judgment ought to be reversed.

MACKINTOSH, J., concurs with BRIDGES, J.