M. E. BRACKENRIDGE AND STATE OF TEXAS v. ISABELLA H. ROBERTS AND ISABELLA H. MCINTYRE.

No. 3923.   Decided December 20, 1924.   March 18, 1925.

(270 S. W., 1001.)

1.—Will—Revocation—Presumption.

It may be presumed that an instrument in writing wholly by decedent and purporting to revoke all previous wills was intended to operate as such revocation and to become a last will, if it bears on its face no evidence to the contrary; but under the circumstances and the character ·of the instrument here considered such presumption could not be extended to attach to the instrument sought to be proven.   (P. 431).

2.—Same—Charge of Court.

On the issue whether a former will was revoked by a writing in pencil in decedent's hand and signed by him, it was error to charge the jury to answer simply the questions whether decedent wrote and signed the same, and whether it was wholly in his own hand writing, making the question of its effect depend wholly on the mechanical acts of the testator, regardless of his intention with reference to it, and where it was written under ·such circumstances as to becloud its purpose as a testamentary declaration.   (Pp. 431, 432).

3.—Same—Case Stated.

Decedent had for seven years a will prepared by his lawyers and duly attested, with eight codicils, made from time to time, slightly altering the dispositions made, partly in view of advancements to various heirs.   Shortly before his death he sent for the will.   There was testimony that he then wrote and signed in pencil a paper professing to be a last will and revoking all former ones; but the writing was not produced, nor was there any evidence as to the rest of its contents.   To his lawyers and others he expressed his conclusion to make no change in the original will; and he had it returned to a safe deposit box without the pencil writing; what became of that was not shown.   *Held*: that it was a question of fact for the jury whether he had a present intention that the pencil writing should be his last will or effect a revocation of the former one, which should have been submitted to them, and not determined by the mere fact that he wrote and signed such a paper.   (Pp. 430-432).

**4.—Evidence—Parties—Transactions with Decedent.**

It was error, the court having overruled objections to testimony of a party as to transactions with decedent, whereupon the question was withdrawn by the counsel for such party, for them to repeat a similar question to another party, and withdraw it also after the court had ruled it admissible, and to comment on the matter in argument to the jury.  (P. 432).

**5.—Will—How Revoked.**

The modes of revoking a will are as definitely prescribed by statute as the modes of making it.  These are "by subsequent will, codicil, or declaration in writing executed with like formalities. . . . or by the testator destroying, cancelling or obliterating the same, or causing it to be done in his presence."  Rev. Stats., art. 7859.  (P. 433).

**6.—Will—Revocation—Reinstatement of Former Will.**

The revocation, by its destruction, of a will revoking a former one, does not have the effect of reinstating the former will, so revoked, as that of the testator.  Nothing short of a new execution of the former will, consistent with the requirements of the law as in its original execution, will have that effect.  Hawes v. Nicholas, 72 Texas, 481, approved and followed.  (Pp. 432-435).

**7.—Statutory Construction—Re-enactment.**

Where a statute has been construed by a court of last resort, and the same is subsequently re-enacted, the presumption prevails that the Legislature readopted it with that construction.  (P. 434).

**8.—Revoked Will—Admission to Probate.**

The statute (Rev. Stats., art. 3271, sec. 5) bars from probate a will which has once been revoked by the testator, though the subsequent will revoking it is lost and can not be produced, or its entire contents proved so as to admit it to probate.  (Pp. 434, 435).

**9.—Same.**

Article 3272, Rev. Stats., requiring proof of the contents of a lost will by at least one witness who had read it all or heard it all read, applies only where such will is offered for probate, and does not control its effect as a revocation of a former will.  (P. 435).

ON MOTION FOR REHEARING.

**10.—Will—Revocation—Burden of Proof.**

The proponents of a will for probate have the burden of proving that it has not been revoked by the testator.  Where there is evidence tending to show the due execution of a later will (holographic) intended by the testator at the time of its execution to be a will, its effect as a revocation of the former will, there being evidence that it contained such a clause, is not nullified by the fact that it can not be produced for probate, and that none of its provisions except the revocation clause can be shown or were read by any witness.  Its effect as a revocation, and that as a will entitled to probate are different questions.  (Pp. 435-437).

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Miss Brackenridge and the State obtained writ of error on a judgment affirming that of the District Court, which had refused to

admit to probate an instrument offered by plaintiffs in error as the will of George W. Brackenridge. The Supreme Court, after having referred the case to the Commission of Appeals, Section A, subsequently withdrew the same from the Commission, and rendered the opinion here shown, reversing the judgment and remanding the case.

*Williams & Neethe, Denman, Franklin & McGowan, F. C. Davis,* and *Marshall Eskridge,* for M. Eleanor Brackenridge, plaintiff in error. *W. A. Keeling,* Attorney-General, for plaintiff in error State of Texas.

The Court of Civil Appeals committed error in holding that, in a trial by jury of the question of whether or not a will legally executed had been revoked by another and later will *executed* by the testator, it was a sufficient submission and decision of such issue, and for the defeat of the prior will, for the trial court to submit to the jury only the questions ''(1) did the said George W. Brackenridge during the latter part of the year 1920 *write* an instrument in pencil and *sign* the same containing words to the effect that he revoked all previous wills made by him; (2) was such instrument wholly written by the said George W. Brackenridge in his own handwriting''; and for the jury to answer those questions in the affirmative, with no submission of, or finding upon, the further question whether or not the instrument mentioned in the issues was so written and signed with the intention of then making it the will of the testator or a revocation of a prior will, or was afterwards adopted by the testator with such intent.

The mere *writing* and *signing* of a paper in testamentary language do not, by themselves, complete the execution of it as a will, or a revocation of other wills, since to give it legal effect, either as a will or a revocation, it must be written and signed with the present intention to make it a will or a revocation, or must be thereafter adopted as such with that intention. Rymes v. Clarkson, 161 Eng. Reprint, 901; Clark v. Hugo, 107 S. E., 730; Edwards v. Astley, 162 Eng. Reprint, 655; Hawkes v. Hawkes, 162 Eng. Reprint, 599; Kirkcudbright v. Kirkcudbright, 162 Eng. Reprint, 601; Wolf v. Bollinger, 62 Ill., 368; In re Thompson, 102 Atl., 306; In re Olmstead Estate's, 54 Pac., 746; McIntyre v. McIntyre, 47 S. E., 504; Williams v. Miles, 127 N. W., 904; Pickens v. Davis, 134 Mass., 253; Williams v. Williams, 8 N. E., 424; Gardiner v. Gardiner, 19 Atl., 653; Penniman's Will, 20 Minn., 245; Knapen's Will, 53 Atl., 1003; Appeal of Strong, 63 Atl., 1089; Harvard Law Review, Vol. 33, No. 3, Article by Prof. Jos. Warren; Randall v. Beatty, 31 N. J. Eq, 644, 40 Cyc., 1077; McBride v. McBride, 26 Grat. (67 Va.) 476, Early v Arnold, 89 S. E., 901; Fleming v. Morrison, 72 N. E., 499; Sewall

v. Robins, 29 N. E., 650; Stickney v. Hammond, 138 Mass., 116.

The Court of Civil Appeals committed error in holding that it was not error for the District Court when requested by plaintiffs in error, to refuse to submit to the jury the question as to intention of the testator in writing and signing the instrument referred to in the issues submitted by the court, if he wrote and signed it, that is whether or not he did so with the present intention of making same his will or a revocation of prior wills, the only evidence offered by contestants of the alleged revocation being that it was contained in a *will* written by the testator, and not in a separate declaration of revocation, and it being shown that this instrument was last seen in testator's possession and was not produced or found after his death, and there being other evidence, that after the time when it is claimed to have been written and signed, that the testator recognized and delivered the will of 1913 with its codicils, offered for probate, as his will, and declared it to be such, and there being many other facts in evidence tending to show that, if such later paper was written and signed by the testator, it was never finally adopted or intended by him as his will, or as a revocation of that offered for probate

The question whether or not an act was done with an intention essential to give it a particular legal effect is one of fact to be determined by the jury, where the evidence is not conclusive of its existence or non-existence; and where the existence or non-existence of such intention is to be deduced from all the facts and circumstances of the case, the deduction must be made by the jury. Rymes v. Clarkson, 161 Eng. Reprint, 901; Clark v. Hugo, 107 S. E., 730; Edwards v. Astley, 162 Eng. Reprint, 655; Hawkes v. Hawkes, 162 Eng. Reprint, 599; Kirkcudbright v. Kirkcudbright, 162 Eng. Reprint, 601; Wolf v. Bollinger, 62 Ill., 368; In re Thompson, 102 Atl., 306; In re Olmstead Est., 54 Pac., 746; McIntyre v. McIntyre, 47 S. E., 504; Williams v. Miles, 127 N. W., 904; Pickens v. Davis, 134 Mass., 253; Williams v. Williams, 8 N. E., 424; Gardiner v. Gardiner, 19 Atl., 653; Penniman's Will, 20 Minn., 245; Knapen's Will, 53 Atl., 1003; Appeal of Strong, 63 Atl., 1089; Harvard Law Review, Vol. 33, No. 3, Article by Prof. Jos. Warren; Randall v. Beatty, 31 N. J. Eq., 644; 40 Cyc., 1077; McBride v. McBride, 26 Grat. (67 Va.) 476; Early v. Arnold, 89 S. E., 901; Flemming v. Morrison, 72 N. E., 499.

The Court of Civil Appeals committed error and at the same time erroneously construed Article 7859 of the Revised Statutes of Texas, in that it held that a later will containing a clause expressly revoking all prior wills had the immediate and final effect of revoking prior wills, even if the later will was never probated, nor susceptible of probate, nor in existence at the date of the testator's death, and

even though it had itself been revoked, cancelled or destroyed by the testator. Herein the Court of Civil Appeals erroneously construed Article 7859 by putting a clause of revocation in a will on the same footing with "a declaration" in writing separately executed, when the true construction of that Article is that, when contained in a will, the clause of revocation is as ambulatory and as subject to the control of the testator as any other part of the will and has no effect as a revocation unless the will containing it is left in force at the testator's death and is established as a will.   Revised Statutes, Art. 7859; Bates v Hacking, 68 Atl., 622; Butler v. Butler, 10 R. I., 501; In re Thompson Est., 198 Pac., 797; Rudy v. Ulrich, 69 Penn. State, 177; Barksdale v. Barksdale, 12 Leigh (Va.), 536 (39 Va.) ; Laughton v. Atkins, 1 Pick. 18 (Mass.), 536.

The Court of Civil Appeals committed error and at the same time erroneously construed Article 3272 of the Revised Statutes of Texas in holding that the contents of a will not produced need not be substantially proved by at least one witness who had read it all or heard it all read, and that it was sufficient, in order to show a revocation by such will of prior wills to prove a revocatory clause alone by witnesses who had read that clause and no other part of the instrument; and herein the Court of Civil Appeals erroneously construed Article 3272 of the Revised Statutes in holding that it applied only where the will was offered for probate, and had no application where it was only sought to prove the revocatory clause for the purpose of defeating the probate of a former will and that consistently with that statute such proof might be made by a witness who had not read or heard read any part of the instrument but that clause and could not state any other contents of the instrument. Butler v. Butler, 10, R. I. 501; In re Thompson's Estate, 198 Pac., 797; In re Noyes, 17 Atl., 743; Schouler on Wills, Secs., 418-419; Laughton v. Atkins, 1 Pick: (18 Mass.), 539; Clark v. Turner, 50 Neb., 290; 38 L. R. A., 433; Newell v. Homer, 120 Mass., 277; Williams v. Miles, 127 N. W., 904; Rhodes v. Vinson, 52 Am. Dec., 687; Jones v. Casler, 38 N. E., 812; Morgan v. Davenport, 60 Texas, 237; Thomas v. Ribble, 24 S. E., 241; Tisdale v. Tisdale, 2 Sneed (34 Tenn.), 605; Edwards v. Noyes, 65 N. Y., 125; Rankin v. Crow, 19 Ill., 626; United States v. Britton, 2 Mason, 464; Fries v. Griffin, 17 Sou., 66; Edwards v. Rives, 17 Sou., 416; Hooper v. Chism, 13 Ark., 496; Board v. Callihan, 10. S. E., 382; Sewall v. Robbins, 29 N. E., 650; Stickney v. Hammond, 138 Mass., 116.

The Court of Civil Appeals committed error in holding sufficient to establish the revocation of the will offered for probate the testimony which tended only to show that, after its execution, another paper, the portion of same testified to being in the form of a will,

was *written* and *signed* in pencil by the testator, which contained a clause revoking prior wills, such testimony being given by two witnesses who had neither read nor heard read any other part of such paper and were unable to state its other contents, and whether or not it contained other language qualifying or limiting the clause of revocation. Same authorities.

The Court of Civil Appeals committed error and further erroneously construed Article 7859, Revised Statutes, holding that a duly executed will could be revoked by the execution of a subsequent will whether or not such will contained an express clause of revocation or made dispositions of property inconsistent with those of the previous will, whereas the true construction of the statute is that a later will only revokes a prior one expressly or by inconsistent dispositions. Revised Statutes, Art. 7859; Lane v. Hill, 44 Atl., 393; Sewall v. Robbins, 29 N. E., 650; Stickney v. Hammond, 138 Mass., 116.

The Court of Civil Appeals committed error in holding that, if the paper relied on by contestants as a revocation was written and signed by deceased, the evidence left no further question as to whether or not this was done with the necessary testamentary and revocatory intent, that is, the intent finally to make such paper his will and the revocation of a prior will. See second and third list of authorities, *supra*.

The Court of Civil Appeals committed error when it refused to hold that there was no evidence of the completed execution of the alleged revocatory will, in that there was no evidence that it was written and signed with the purpose and intent to make or adopt it as a will, the evidence conclusively showing, on the contrary, that the testator concluded to abide by his will of 1913 and the codicils thereto. Same authorities.

The Court of Civil Appeals committed error in holding that there was not sufficient evidence, that the testator, if he wrote and signed the alleged revocatory paper afterwards destroyed it with the intention of revoking it and of reviving the will of 1913, to entitle plaintiffs in error to a submission of that issue; and in holding that the trial court did not err in refusing the submission of this question as requested by plaintiffs in error; and in this connection the Court of Civil Appeals erred in holding, as the law of this State, that a will revoked by a later one cannot be revived by the testator revoking the later will with intent to restore the prior one, and that the testator must die intestate unless he executes a new will, or re-executes the old, in accordance with the statute, so as to make it a new will, notwithstanding the purpose of the testator, conclusively shown by the evidence and admitted by the court, to die testate. Usticke v. Bawden, 162 Eng. Reprint, 238; Braham v. Burchell, 162

Eng. Reprint, 468; Long v. Aldred, 162 Eng. Reprint, 399; Pickens v. Davis, 134 Mass., 252; Williams v. Williams, 8 N. E., 424; Gould's Will, 47 Atl., 1082.

The Court of Civil Appeals committed such an error in holding that the lower court did not err in permitting counsel for contestants, after the court had overruled objections of proponents to testimony of contestants concerning the execution of the alleged will of 1920 to withdraw their questions framed so as to elicit such testimony and thereafter argue to the jury that the testimony was inadmissible and that they had not introduced it because they did not wish any error in the case, thus getting before the jury the impression that the contestants, if they had testified, would have corroborated Mrs. Mitchell and Mrs. Peeler. Willis v. McNeill, 57 Texas, 465; Galveston v. Washington, 92 S. W., 1059; Western etc. Co. v. MaeKechnie, 214 S. W., 465; Alamo etc. v. Prado, 220 S. W., 292; Vogt v. Guidry, 229 S. W., 656.

*W. A. Keeling,* Attorney-General, and *E.ᵃ F. Smith, Wallace Hawkins,* and *Tom L. Beauchamp,* assistants, for plaintiff in error the State of Texas, also filed separate briefs and arguments.

Was it intended by his subsequent will that he should die leaving his property to go to his heirs according to the laws of descent and distribution? Most assuredly not. He was a lawyer and knew full well that to destroy the wills which he had would accomplish this without his worrying during the feeble hours which he passed in an effort to write a will according to the story of Mrs. Harris, "that could not be broken." For all we know that will destroyed the monthly allowances made to George Peeler, husband of the other witness. For all we know it gave his entire estate to his sister, the proponent herein. For all we know or may ever know, it gave the entire estate for that purpose which had been uppermost in his life—the education of the deserving youths of his country. But this we do know: he did not intend that the revocatory clause testified about should destroy his will and leave no other to take its place. The only course that it is certain to accomplish, that which is contrary to the intention of the testator, is the thing that has been done, the refusal to probate his will and to order his property to descend according to the laws of descent and distribution.

*H. P. Drought* and *Boyle, Ezell & Grover,* for defendants in error.

There being no pleading that the revocatory instrument was written merely for the purpose of comparison, experiment or future deliberation, or with no intent to revoke the will offered for probate,

and no such issue having been requested to be submitted to the jury, and the Court of Civil Appeals having found as a fact that there was no evidence that tended to show that the instrument was not seriously and deliberately executed for the purposes recited in it, and such finding being supported by the evidence the trial court did not err in not submitting such issue to the jury, nor did the Court of Civil Appeals err in overruling plaintiffs in error's assignments, if any such there were, (which we deny), attempting to present that question.     Hawes v. Nicholas, 72 Texas, 481; Barnes v. Horne, 233 S. W., 859; Ainsworth v. Briggs, 108 S. W., 753; Brown v. Avery, 58 So. 35; Barnewall v. Murrell, 18 So. 831; In Re Fouche's Estate, 23 Atl., 547; Bruce v. Sierra, 57 So. 709; Barker v. Bell, 46 Ala., 216; Aldrich v. Aldrich, 102 N. E., 487; 3 A. L. R., 843; Alexander on Wills, Volume 1, Sections 464, 466, 479; In re Streeton's Est., 191 Pac., 16; Sullivan v. Murphy, 179 Pac., 680; 40 Cyc., 1097; Rice v. Freeland, 109 S. E., 186; In re Est., Walker, 42 Pac., 815.

An express clause of revocation, whether contained in a will, or in a separate instrument is not ambulatory, under the laws of this state, but takes effect immediately upon the legal execution of the instrument, and will be given effect as a revocation regardless of whether the instrument is ever admitted to probate or not, where such revocatory instrument has been lost or destroyed, and proof of the revocatory clause therein is offered in evidence in opposition to the probate of a prior will.     Hawes v. Nicholas, 72 Texas, 481; Dougherty v. Holscheider, 88 S. W., 1113; Clover v. Clover. 224 S. W., 916; Pickens v. Davis, 134 Mass., 252; Wallis v. Wallis, 114 Mass., 510; Aldrich v. Aldrich, 215 Mass., 164, 102 N. E., 487; Melhase v. Melhase, 171 Pac., 216; In re Cunningham 36 N. W., 269; Stevens v. Hope, 17 N. W., 698; Price v. Maxwell, 28 Pa., 23; Page on Wills, Section 271; Alexander on Wills, Volume 1. Sec. 532; Sisters of Charity v. Kelly, 67 N. C., 409; Bohanon v. Walcot, 29 Am. Dec., 632; Colvin v. Warford, 20 Md., 391; James v. Marvin, 3 Conn., 577; Alexander on Wills, Vol. 3, Sec. 1309; Williams v. Miles, 94 N. W., 705; Muller v. Muller, 56 S. W., 802; Lane v. Hill, 44 Atl., 393; Cheever v. North, 64 N. W., 455; Dudley v. Gates, 83 N. W., 97; In Re Wear's Will, 116 N. Y. S., 304; In Re Patterson, 102 Pac., 941; In Re Barnes, 75 N. Y. S., 373; Burns v. Travis, 18 N. E., 45; Succession of Seymour, 20 So., 217.

It being established by a preponderance of the evidence, and found as facts by the Court of Civil Appeals, that the testator in December, 1920, and long subsequent to the execution of the will and codicils offered for probate, executed a will or declaration in writing with like formalities, for the purpose of revoking all prior wills, which said instrument was wholly written in his own hand-

writing and signed by him, which contained a clause expressly revoking all previous wills made by him, which said instrument was shown to have been lost or destroyed, and therefore could not be produced in court; and it being only necessary in such case to establish the due execution of the instrument. and that it contained an express clause of revocation, and said revocatory clause, in its entirety, having been established by clear and satisfactory evidence, and in the manner provided by the statute, it being further established that said revocatory clause was followed by a bequest to his sister, the extent of which was unknown; and said clause in said revocatory instrument being offered only in opposition to the probate of the will and codicils offered by plaintiffs in error, said revocatory clause will be given effect notwithstanding evidence of the rest of the contents of said instrument cannot be obtained and notwithstanding the witnesses may not have read the entire contents of said will. R. S. Articles 3267, 3268, 3271; Buchanan v. Rollings, 122 S. W., 962; Clover v. Clover, 224 S. W., 920; Dougherty v. Holscheider, 88 S. W., 1113; Hawes v. Nicholas, 72 Texas, 481; Alexander on Wills, Vol. 3, Sec. 1309; In Re Barnes, 75 N. Y. S., 373; In Re Wear's Will, 116 N. Y. S., 304; Billington v. Jones, 66 S. W., 1127; See also authorities previously cited.

Where a case is submitted to the jury on special issues, the court is not required to submit evidentiary facts, but is only required and should only submit to the jury the independent ultimate facts which go to make up the cause of action sued upon or grounds of defense urged. All of the requested issues relate merely to evidentiary matter and none of them to the ultimate fact of revival, and if the requested issues had been submitted and answered by the jury in favor of plaintiffs in error they would not have authorized the rendition of a different judgment from that rendered by the court. Therefore no error is shown. Moreover there was no pleading of a revival of any character, and for this reason no error is shown. Texas Trans. Co. v. Winters, 222 S. W., 541; Payne v. Doubtful, 236 S. W., 138; Railway v. Guzman, 221 S. W., 1102; Railway v. Durrett, 187 S. W., 427; Kelly v. Ward, 94 Texas, 289; Railway v. Thomas, 175 S. W., 822.

When a bill has once been revoked, in the manner provided by the statute, it cannot be revived and given effect in this state, except by re-execution, according to the formalities required by the statute. or by some instrument in writing, executed as required for the execution of a will in the first instance. Vickery v. Hobbs, 21 Texas. 571; Hawes v. Nicholas, 72 Texas, 481; Chaddick v. Haley, 81 Texas, 617; Scott v. Fink, 7 N. W., 799; Stewart v. Mulholland, 10 S. W., 125; James v. Marvin, 3 Conn., 577; Dougherty v. Holscheider, 88

S. W., 1113; In Re Stickney's Will, 55 N. E., 396; Alexander on Wills, Vol. 1, Sec. 468, 469, 476-479, 562-564; 28 R. C. L., Sec. 153, p. 194, sec. 194; Danley v. Jefferson, 114 N. W., 470; Carey v. Baughn, 14 Am. Rep., 534; In re Noon's Will, 91 N. W., 670; 40 Cyc. p. 1213; 40 Cyc. p. 1214; Barker v. Bell, 46 Ala., 216; In Re Baum, 112 Atl., 141; In Re Lawler, 185 N. Y. S., 726; Brown v. Clark, 77 N. Y., 369; Means v. Ury, 53 S. E., 850; Thompson on Wills, Sec. 476. On question of adoption of the common law; Grigsby v. Reib, 105 Texas, 597.

The decision of the Court of Civil Appeals in holding that no error was shown in appellants' brief in reference to admitting certain testimony is final, and no question of substantive law in reference thereto is presented which this court should review.   Decker v. Kirlicks, 216 S. W., 386; Hartt v. Cattle Co., 228 S. W., 551; Smith v. Butcher, 223 S. W., 166; Langford v. Newsom, 220 S. W., 544; Slaton v. Bank, 221 S. W., 955; Texas City Tr. Co. v. Winters, 222 S. W., 541; Holland v. Nimitz, 239 S. W., 185.

The thirteenth assignment of error in the petition relates to the action of the trial court in permitting counsel for contestants to withdraw certain questions propounded by them to contestants, upon objections having been made to said questions by counsel for proponents, and overruled by the court; and in permitting contestants' counsel to thereafter argue to the jury that the testimony was inadmissible and that they had not introduced it, because they did not wish any error in the case.   The decision of the case did not turn, and could not have turned, upon such proceeding, or the fact that such testimony was not introduced, or the questions withdrawn, or upon the argument of counsel in reference thereto.   Therefore the decision of the Court of Civil Appeals holding no reversible error was shown in appellants' brief in reference to such matter is final, and no question of substantive law, within the jurisdiction of this court, with reference thereto, is presented.   Same authorities.   Also: Marshall v. Campbell, 212 S. W., 723; Smith v. Tel. Co., 104 Texas, 171.

MR. JUSTICE PIERSON delivered the opinion of the court.

This case was referred to Section A of the Commission of Appeals. Thereafter its Presiding Judge, S. H. German, prepared and filed with the Court a very exhaustive and far reaching opinion.   Inasmuch as the opinion dealt with very important questions of first impression affecting the law of wills and also overruled a prior decision of this Court, it was deemed advisable to withdraw the case from the Commission and to set it for hearing and opinion by the Court.

We adopt Judge German's statement of the case, as follows:

"This suit involves a contest of a will and codicils executed by George W. Brackenridge, late of Bexar County, Texas. The will proper was executed with all the formalities required by law September 8, 1913. Afterwards at different times Mr. Brackenridge executed and appended to said will eight codicils, the last being dated August 30, 1918. Each of these codicils was in his own handwriting, except the last, which was written by Judge T. H. Franklin and was properly signed and witnessed. It is not necessary for us to refer to the provisions of this will, except to say that it sought to dispose of a large estate consisting of both real and personal property.

"George W. Brackenridge died in Bexar County December 28, 1920. On January 17, 1921, Miss M. Eleanor Brackenridge, the then sole surviving sister of George W. Brackenridge, filed in the County Court of Bexar County an application for the probate of this will and the various codicils. In due time Mrs. Isabella H. Roberts and Mrs. Isabella H. McIntyre, who are nieces of George W. Brackenridge, filed formal objections to the probate of said will. The State of Texas was permitted to intervene, due to the fact that the State University was an interested party. On a hearing in the County Court, by order of March 28, 1921, the will with its codicils was admitted to probate. From this order appeal was taken by the contestants, Mrs. Roberts and Mrs. McIntyre, to the District Court of Bexar County. In the District Court contestants amended their pleadings, setting out more fully the grounds upon which they contested the probate of the will. They alleged that the will and codicils filed for probate had been revoked by the said George W. Brackenridge in this way:

"First, by a subsequent will, wholly written by the said George W. Brackenridge in his own handwriting, the contents of which will were unknown to contestants, except that it contained a clause expressly revoking all prior wills; that this subsequent will was executed some time during the month of December, 1920, and the same had never been in their possession.

"Second, by the execution of a declaration in writing wholly written by the said Brackenridge in his own handwriting, the contents of same being unknown to contestants, but that it stated in substance that it revoked all former wills and codicils. It was alleged that this declaration was written some time during the month of December, 1920, and had never been in the possession of contestants.

The testimony is voluminous, and it is not necessary to notice more than a small portion of it. As touching the issue of the execution

by George W. Brackenridge of the instrument of December, 1920, and its contents, the evidence may be briefly summarized as follows:

"For some time prior to his death Mr. Brackenridge had expressed a desire to make some changes in his will of 1913. Sometime in 1917 or 1918, at his request, Leroy G. Denman prepared an instrument, intended to take the place of the former will and all codicils, with some changes. Mr. Brackenridge was not satisfied with some of the changes and took the instrument with him, saying that if he decided to execute it he would write it in his own handwriting. Some three or four months before his death he went to his place of business where the will of 1913 was kept, and took it to his home, where it remained until the day of his death. At about the time he took the papers to his home he expressed a desire to make some slight changes in the will.

"Mrs. Ila H. Mitchell, who attended Mr. Brackenridge as day nurse for some two years before his death, testified substantially as follows: That some time in December, 1920, the exact date she could not name, but possibly about the 12th of that month, Mr. Brackenridge stated that he had decided to write his will. That he began to write, using a pencil and a blank sheet of paper, being what was commonly known as a second sheet of letter paper. That he wrote on this paper at different times for several days, and she thinks completed the writing about the 15th of December. That about the 18th of December she heard him say that he was glad he had finished his will. That after the writing was finished, she saw the instrument on Mr. Brackenridge's table, and read the beginning clause. She could not remember the date, but testified that it was dated and had the signature of George W. Brackenridge at the bottom of the writing on the page. That the writing covered a considerable part of the page, being written in very small letters, in the handwriting of Mr. Brackenridge, and entirely with pencil. She never read any part of the instrument, except the beginning clause, which was about to the effect that it was the last will of the said George W. Brackenridge and revoked all other wills theretofore made. She knew nothing whatever of its contents, except as to the revoking clause and that the name of Miss Eleanor Brackenridge was written in the instrument. She also testified that prior to the time she last saw this paper Mr. Brackenridge had kept it in the envelope or package with the will of 1913 and other papers. She last saw this instrument on the table with other papers on the 18th day of December, 1920, while Dr. Vinson was present with Mr. Brackenridge.

"Mrs. George Peeler, whose husband is a son of a niece of George W. Brackenridge, testified substantially as follows: That she frequently visited Mr. Brackenridge at his home and was familiar with

his handwriting. That she was in his room on the 18th day of December, 1920, and at that time saw an instrument, which she designated as his will, on his table, written on a sheet of white paper, in the handwriting of Mr. Brackenridge, being dated and having his signature to same. That the writing covered about three-fourths of the page. That she looked at it twice, but did not read any part of it, except the beginning clause, which was, as stated by her, to the effect that it was the last will of the said George W. Brackenridge and revoked all former wills made by him. She did not see the name of Miss Eleanor Brackenridge on the paper. Ths was the last and only time she ever saw this instrument.

"Judge Thos. H. Franklin testified that he was at the home of Mr. Brackenridge on December 14th, 1920, at which time a certain deed in trust was executed. At that time he asked Mr. Brackenridge if he had ever sent his will back to the Loan & Trust Company for safe keeping, and Mr. Brackenridge replied that he had not, and that he had determined to make no changes in it whatever. Dr. R. E. Vinson testified in substance that he was at the home of Mr. Brackenridge on the 16th, 17th and 18th of December, 1920, during which time he read to Mr. Brackenridge the will of 1913 and discussed its provisions with him. That at that time Mr. Brackenridge expressed himself as being satisfied with the will of 1913 and stated that he desired to make no change, except to add the name of one trustee, unless he changed his mind, which he always reserved the right to do. About two days before his death Mr. Brackenridge requested his sister, Miss Eleanor Brackenridge, to take a package of papers, which he spoke of as containing his will, to the bank for safe keeping. On the morning of the 28th of December, Miss Brackenridge took a package of papers, pointed out to her by her brother, and which she thought was the same package which he had tendered to her about two days before, and deposited them in her lock box at the bank. After the death of Mr. Brackenridge this package of papers was opened in the presence of Miss Brackenridge, and among other papers contained the will of 1913 and its various codicils. The writing testified about by Mrs. Mitchell and Mrs. Peeler was not in the package.

"The trial court submitted to the jury only two questions, as follows:

" '1. Did the said George W. Brackenridge during the latter part of the year 1920 write an instrument in pencil and sign the same containing words to the effect that he revoked all previous wills made by him?'

" '2. Was such instrument wholly written by the said George W. Brackenridge in his own handwriting?'

"Both of these questions were answered in the affirmative. On these answers the court rendered a judgment denying the application to probate the will of 1913 and its codicils, and adjudging that the same had been revoked. This judgment was affirmed by the Court of Civil Appeals at San Antonio. 245 S. W., 786.''

The trial court rested the whole decision purely on the fact of the testator's writing and signing an instrument containing an expression of revocation, and whether it was wholly in his own handwriting. The case thus rests entirely upon the mechanical acts of the testator, regardless of his intention as to the writing or for what use or for what purpose it was prepared by him. It might be presumed that such a paper was intended to revoke a prior will and also to become a last will, if the instrument bears on its face no evidence to the contrary and the circumstances surrounding its preparation do not impeach or contradict such intention. But to say that a penciled note, even though signed and in his own handwriting is a will, notwithstanding it was executed under circumstances that becloud its purpose as a testamentary declaration, and throw such doubts around it as that reasonable minds might conclude that he did not execute it as a will or as a revocation, is to carry that presumption far beyond reason.

Under the facts and circumstances of the preparation of the writing in December, 1920, by Mr. Brackenridge, in this case it clearly becomes a question of fact, an important issue of fact to be determined by the jury, as to whether such writing was intended to be and was his last will and to have effect as such and to effect a revocation of his prior will.

The Supreme Court of Appeals of Virginia, in Clark v. Hugo, 107 S. E., 730, in discussing this question said:

"It must satisfactorily appear that he intended the very paper to be his will. Unless it does so appear, the paper must be rejected, however correct it may be in form, however comprehensive in its details, however conformable to the otherwise declared intentions of the party, and although it may have been signed with all due solemnity.

\*       \*       \*       \*       \*       \*       \*       \*

"It is true that no particular language or form is necessary to constitute a valid will, and that the surrounding circumstances are admissible to explain, in a proper case, the intention of the testator; but one may execute a paper with every formality known to the law and by it devise all his property, but unless he intends that very paper to take effect as a will, it is no will."

The court, as requested by plaintiffs in error, should have submitted to the jury for its determination the question as to whether or not

Mr. Breckenridge intended the writing testified to by Mrs. Mitchell and Mrs. Peeler to be and to constitute his last will or a declaration in writing revoking former wills. To give the instrument the legal effect either of a will or of a revocation of former wills, it must be written and signed with the present intention to make it a will or a revocation. Where the evidence is not conclusive of the existence or nonexistence of such an intention, and where its existence or nonexistence is to be deduced from all the facts and circumstances of the case, the issue must be determined by the jury. The testimony clearly raises the issue as to whether Mr. Brackenridge executed the instrument of 1920 with the present intention that it be his last will or as a mere penciled memorandum, concerning which he was to deliberate and finally use or reject, in case he should decide to write a new will. Rymes v. Clarkson, 161 Eng. Reprint, 901; Kirkcudbright v. Kirkcudbright, 162 Eng. Reprint, 601; In re Olmstead Est., 54 Pac., 746 (Col.); McIntyre v. McIntyre, 47 S. E., 504, (Ga.); Gardiner v. Gardiner, 19 Atl., 653, (N. H.); Mcbride v. McBride, 26 Grat. (Va.), 476; Early v. Arnold, 89 S. E., 900; Flemming v. Morrison, 72 N. E., 478, (Mass.); In re Harrison's Will, 111 S. E., (S. C.).

We think the trial court erred in overruling proponents' objections and in permitting counsel for contestants to question them (Mrs. Roberts and Mrs. McIntyre) relating to certain conversations and transactions with deceased about which under Art. 3690 R. S. they were incompetent witnesses; and after attorneys on their own accord had withdrawn such questions, then to permit them in argument to refer to such questions and the fact that Mrs. Roberts and Mrs. McIntyre were not permitted by statute to testify to declarations by and transactions with George W. Brackenridge, deceased, and for that reason they were afraid to insist upon these parties testifying as to the facts. The questions, their withdrawal, and the comments in argument were a violation of the principle and the spirit of Art. 3690. Such errors will necessitate a reversal of the case. Our holding in this particular applies to that part of their testimony relating to conversations with the deceased or connecting him with the acts testified about. Inasmuch as this error will hardly occur upon another trial, we do not deem it necessary to further state the facts or discuss the law.

If it be established that Mr. Brackenridge did execute a will in December, 1920, or a declaration in writing revoking former wills, and it be found that same had been destroyed by him with the intent to revoke it, then it becomes a pertinent inquiry as to what effect the execution of such subsequent will had upon his former will of 1913 offered here for probate.

Art. 7859, R. S., reads:

"No will in writing, made in conformity with the preceding articles, nor any clause thereof or devise therein, shall be revoked, except by a subsequent will, codicil or declaration in writing, executed with like formalities, or by the testator destroying, cancelling or obliterating the same, or causing it to be done in his presence."

It was held in Morgan v. Davenport, 60 Texas, 230, that "no valid written will can be revoked in Texas, except in one of the modes pointed out by the statute." We think it equally clear that such a will can be revoked by any one of the modes pointed out by the statute, and that Art. 7859 means that a will in writing made in conformity with legal requirements may be revoked by a "subsequent will * * * executed with like formalities."

Articles 7857 and 7858 provide the requisites and methods by which a valid will may be executed.

The modes of revoking a will are as definitely prescribed in Article 7859 as the modes of making it; and no essential part of the one can be dispensed with any more than the other.

Plaintiffs in error urge the view that the destruction of such subsequent will left the former will in force, or had the effect to revive it. Both of these views were definitely ruled on, we think correctly, by this Court in Hawes v. Nicholas, 72 Texas, 481. In that case propositions were made, and the issues clearly presented: (1) That since no part of a will can become operative before the death of the testator, a subsequent will which is itself destroyed and revoked can have no effect to annul a former will, even though such subsequent will contained an express clause of revocation of all former wills; (2) that though Revised Statutes provide several modes by which a will may be revoked, one being by a subsequent will, yet, if a subsequent will has been destoyed, with the purpose of revoking it, such subsequent will is, in legal contemplation. no will at all, and cannot affect a prior will left in existence by the testator: (3) for a subsequent will to have the effect to supersede and annul a previous will. it must be in existence at the testator's death, and must be produced and proved and admitted to probate, without which it has no effect for any purpose. A number of authorities were cited in support of these propositions. (p. 482).

After reviewing authorities on both sides of the issues, Associate Justice Henry decides them in the following language:

"In our State a statute prescribes the method of revoking a will to be "By subsequent will, codicil, or *declaration in writing* executed with like formalities, * * * or by the testator destroying, canceling' or obliterating the same, or causing it to be done in his presence." Rev. Stat., art. 4861.

114 Tex. Sup.—28.

"A written declaration properly executed as effectually revokes a will from the date of its execution as does its destruction. If the purpose to revoke is sufficiently expressed and the writing is properly executed, it can not be controlled or limited by the name given the instrument, or by its containing other provisions.

"If the will of 1879 was properly executed as a will and contained a clause expressly revoking the will of 1873 we do not think that the subsequent destruction of the will of 1879 had the effect of reviving the will of 1873."

Art. 4861 as it existed in 1889 is now Art. 7859 without change. Since the Legislature in this Article provided that a testator may revoke his will by a subsequent one, and since this Court, as far back as 1889 in the above case, construed the statute to mean that the execution of a subsequent will had the effect to immediately revoke such prior will, regardless of the continued existence of such subsequent will, and since many legislatures have met since and have made no change in the rule, the Court would not now announce a different and exactly contrary construction, and thus legislate where the Legislature has declined to do so. The Statutes have been revised and recodified twice since 1889, once in 1895 and again in 1911. Thus has the Legislature twice re-enacted this Article with the construction placed upon it by this Court. When a statute has been construed by the court of last resort of a State, and the same is substantially re-enacted, the presumption prevails that the Legislature adopted such construction. Cooper v. Yoakum, 91 Texas, 391, 43 S. W, 871; Cargill & Dennis v. Kountze Bros., 86 Texas, 386; Michie's Digest, Vol. 15, p. 978; 25 R. C. L., § 297.

Under our law the fact that the testator may have himself destroyed a subsequent will cannot have the effect to revive a prior will found with his papers. Numerous authorities could be cited that hold that a revoked will cannot be revived by declarations and acts indicating such an intent, and that nothing short of a new execution and new publication consistent with the requirements of law, as in its original execution, will suffice to give it validity; yet we need not go further than our own statutes for final authority upon the subject in Texas. If it once be established that a will has been revoked, that fact is a fatal barrier to its being admitted to probate. Art. 3271, Sec. 5, R. S., provides: "Before admitting a will to probate, it must be proved to the satisfaction of the court * * * that such will has not been revoked by the testator." The statute itself bars from probate a revoked will. The statute itself forecloses the issue of the revival of a *revoked* will. Under it a will once revoked is at an end. Nothing short of a new will, a new execution and a new publication of it as a will, will give it validity and admit it to probate. Neither

can the fact that a subsequent and revoking will is lost and cannot be produced or proven for probate have that effect. The execution of a subsequent will, which is lost, doubtless does indicate that the testator did not intend to die intestate, but the court can not make for him a will or supply a testament by admitting to probate a will that has been set aside by him by the execution of a subsequent will.

The controlling issue in this case is whether or not Mr. Brackenridge executed a will subsequent to the 1913 will with the present intention that it be his will and to revoke former wills. If so, the will of 1913 was revoked by it and could not be probated, even though such subsequent will be lost and could not be substantially proven for probate, but only that it had been executed according to legal requirements and was in fact a will.

If a subsequent will could have no effect as a revocation until after the death of the testator, such subsequent will if lost, even though its existence and the intention of the testator as to its effect as a will were clear, could not affect prior wills. This would annul and abrogate that provision of the statute which provides that a will in writing, made in conformity to legal requirements, may be revoked "by a subsequent will". Under this construction a subsequent but lost will could have no effect for any purpose unless its contents could be substantially proven for probate as provided in Art. 3272, R. S.

What we have said disposes of the fourth assignment of error of plaintiffs in error, wherein they say the Court of Civil Appeals erred in construing Art. 3272, R. S., and in holding that for a subsequent will to have the effect of revoking a former will, it was not necessary that such former will be produced or its contents substantially proven by at least one witness who had read it all or heard it all read, and in holding that Art. 3272 applied only where such will was offered for probate. We find no error in this holding of the Court of Civil Appeals. In re Brackenridge's Estate, 245 S. W., 790, and cases cited.

For the reasons stated the judgments of the Court of Civil Appeals and of the trial court are reversed, and the cause is remanded to the District Court for new trial.

Chief Justice Cureton took no part in the decision of this case.

### ON REHEARING.

Able counsel for plaintiffs in error have filed a motion for rehearing, in which they strenuously argue that this Court should render judgment in favor of plaintiffs in error. They say that contestants failed to prove, and were unable to prove, the contents

of the so-called revoking will of 1920, and on that account no effect can be given to it whatever; and that without it there is no proof that the 1913 will, offered for probate, was ever revoked, and therefore it should be admitted to probate.    Their proposition is, you cannot prove an instrument by proving a part of it, and argue that since all of the said 1920 instrument cannot be . proven, it cannot be known and it is not shown that Mr. Brackenridge did not modify the revoking clause therein contained as testified to by the witnesses, or that he did not make it and the whole writing conditioned upon some contingency or otherwise limit, modify, or destroy its effect.

We may grant the proposition that an instrument cannot be proved by proving a part of it.    But we must not confuse the issue.    The real issue is not whether the 1920 instrument is or is not proved.    The issue is whether or not plaintiffs in error, proponents of the 1913 will, have proved that it (the 1913 will) was not revoked by Mr. Brackenridge.    If the instrument alleged to have been executed by Mr. Brackenridge in December, 1920, as a will were offered for probate, it could not be probated upon the proof offered.    To prove that an instrument did exist, and to prove what the instrument in all of its parts did contain, are quite different issues.    Of course, enough must be proved to show that the instrument was a will in its essential attributes.    The Honorable Court of 'Civil Appeals for the Fourth Supreme Judicial District and the Honorable District Court in this case held the view that an instrument in writing in the form of a will, containing a clause revoking former wills, and written and signed by the testator in his own handwriting, was and constituted a will under the terms of our statutes.    That view is correct as far as the legal rule goes, and if it be admitted that such an instrument so executed was intended by the testator to be his will at the time of its execution, it would be a will.    It is quite another thing to prove such an instrument for probate.    The whole of the instrument must be proved with the quantum of proof provided by Article 3272.    Likewise, when there is proof which raises the issue that the testator did write and sign a subsequent will containing a revoking clause, with the present intention that same be his will, it cannot be said that because all of its contents cannot be proved it could have no effect upon the issue as to whether a former will had been revoked by the testator.

In offering the 1913 will for probate, it was incumbent upon proponents, plaintiffs in error here, to prove that it had not been revoked. It is provided in Article 3271, Sec. 5, "Before admitting a will to probate, it must be proved to the satisfaction of the court    *    *    *    that such will has not been revoked by the testator."

In a will contest the burden of proof is on the proponent.    Prather v. McClelland, 26 S. W., 657; Locust v. Randle, 102 S. W., 947;

Green v. Hewett, 118 S. W., 171. See also Lanham v. Lanham, 146 S. W., 635.

The testimony offered by contestants in this case, while falling short of that required before the instrument of 1920 could be probated as a will, yet is sufficient to raise the issue as to whether the will of 1913 was revoked by the testator. This is true notwithstanding all the contents of the alleged instrument of 1920 could not be proven. The issue in regard thereto is not that an instrument can be proved by producing only a part of it.

When the testimony in a case clearly raises an issue as to whether a testator did execute a subsequent will containing a revoking clause, it has a direct and positive bearing upon the issue whether or not the will offered for probate was revoked by the testator. The burden of proof being upon the proponent of the will offered for probate, certainly the fact that contestants were unable to prove all the contents of such subsequent will would not discharge or relieve the proponents from such burden.

The motion for rehearing is overruled.

Chief Justice Cureton not sitting.