## SHIELS v. SHIELS.

### No. 4961.

Court of Civil Appeals of Texas. Texarkana.

Oct. 28, 1937.

Hamilton, Hamilton & Turner, of Dallas, and Thos. W. Thompson, of Greenville, for appellant.

Cunningham & Lipscomb, of Bonham, and Neyland & Neyland, and Clark, Harrell & Clark, all of Greenville, for appellee.

JOHNSON, Chief Justice.

On September 6, 1934, appellee, Charlott Jane Shiels, mother of Ernest Shiels who died August 14, 1934, filed her application in the county court of Hunt county to probate an instrument alleged to be the last will and testament of said Ernest Shiels, deceased. The application was contested by Alice M. Shiels, wife of the deceased. From an order of the county court admitting the instrument to probate, contestant appealed to the Sixty-Second judicial district court of Hunt county. Trial of the cause in the district court was had to a jury. At the close of the evidence the court peremptorily instructed the jury to return a verdict for proponent, and judgment was accordingly entered probating the instrument as the last will and testament of Ernest Shiels, deceased. The contestant has appealed.

Appellant contends that the testimony raised an issue as to whether the deceased in executing the instrument did so with the intention that it should operate as a testamentary disposal of his property or merely as a compliance with the ceremonial requirements of the secret society into which he was then being initiated.

The secret society into which the deceased was being initiated at the time he

executed the instrument is that generally known as the Masonic Order. The circumstances under which the deceased executed the instrument were testified to by the two subscribing witnesses, V. M. Payne and Sam D. McCluney. In substance, their testimony is that the deceased had previously been initiated through three degrees of the order and at the time of executing the instrument in question was a member of a class of approximately 150 candidates for the Scottish Rite ceremonial, through the fourth to the fourteenth degrees of the order; that the 150 candidates were taken into a committee room and there informed for the first time by Mr. McCluney, chairman of the committee in charge of the class, that each member who had not previously done so was required to make a will at that time, without leaving the lodge room, and that any member who had not already made a will and who then failed or refused to make a will, without leaving the lodge room, would be required to withdraw from the class, and would be denied further initiation into the degrees of the order; that they were not directed as to whom they should will their property, but that they were "required" to make a will to somebody; that the will could be witnessed only by thirty-second degree masons, and would be kept in the archives of the lodge until they had finished taking the degrees, at the conclusion of which ceremonies it could be withdrawn, destroyed, or revoked by the member. At this time each candidate was handed a slip of paper containing a printed caption and conclusion of a formal will to be filled in and signed by him. Mr. Payne identified his signature to the instrument here in question, but testified that he did not know Ernest Shiels and did not remember having seen him sign it; that he had served on the committee for a number of years, and knew that the candidates were told that "it was necessary to make a will in taking these degrees." He further testified that "they were going through a routine"; that as each man would finish his will the chairman of the committee would sign it as a witness and then call on some member of the committee to sign it as a witness. Mr. McCluney testified that he remembered Mr. Shiels, that he was about twenty-four or twenty-five years of age, that he was sitting by a Mr. Mitchell with whom the witness was acquainted; that when he handed the printed form to him, Mr. Shiels protested and said that he did not want to make a will, that he did not have anything to make a will for; that witness then told him he could revoke it or withdraw it after he had finished the ceremony through the fourteenth degree. Shiels then wrote into the blank space between the printed caption and conclusion the following words: "It is my will that all my property both real and personal should become the property of my mother, Charlott Jane Shiels."

He then signed the instrument. It is dated April 24, 1911, and witnessed by Sam D. McCluney, 32d°, and V. M. Payne, 32d°. The instrument is testamentary in form.

Testamentary intent on the part of the maker is essential to constitute an instrument a will, regardless of its correctness in form. And the issue of such intention is not limited to the language of the instrument alone. The facts and circumstances surrounding its execution may be looked to in determining whether the maker intended it to be a testamentary disposition of his property or merely to be used for some other purpose.

In point of fact the particular circumstances here presented do not appear to have been passed on by any of the appellate courts of this state. However, the rule of law involved was declared and applied by our Supreme Court in the case of Brackenridge v. Roberts, 114 Tex. 418, 267 S.W. 244, 246, 270 S.W. 1001. In that case, circumstances beclouding the purpose of the maker with no greater uncertainty than the circumstances here presented were held sufficient to raise the issue as to whether Mr. Brackenridge in executing an instrument, testamentary in form, did so "with the present intention that it be his last will or as a mere penciled memorandum, concerning which he was to deliberate and finally use or reject, in case he should decide to write a new will." The Supreme Court, speaking through Judge Pierson, said:

"The trial court rested the whole decision purely on the fact of the testator's writing and signing an instrument containing an expression of revocation, and whether it was wholly in his own handwriting. The case thus rests entirely upon the mechanical acts of the testator, regardless of his intention as to the writing or for what use or for what purpose it was prepared by him. It might be presumed that such a paper was intended to revoke a prior will

and also to become a last will, if the instrument bears on its face no evidence to the contrary, and the circumstances surrounding its preparation do not impeach or contradict such intention. But to say that a penciled note, even though signed and in his handwriting, is a will, notwithstanding it was executed under circumstances that becloud its purpose as a testamentary declaration and throw such doubts around it as that reasonable minds might conclude that he did not execute it as a will or as a revocation, is to carry that presumption far beyond reason.

"Under the facts and circumstances of the preparation of the writing in December, 1920, by Mr. Brackenridge, in this case it clearly becomes a question of fact, an important issue of fact to be determined by the jury, as to whether such writing was intended to be and was his last will, and to have effect as such, and to effect a revocation of his prior will.

"The Supreme Court of Appeals of Virginia, in Clark v. Hugo, 130 Va. 99, 107 S.E. 730, in discussing this question said:

" 'It must satisfactorily appear that he intended the very paper to be his will. Unless it does so appear, the paper must be rejected, however correct it may be in its form, however comprehensive in its details, however conformable to the otherwise declared intentions of the party, and although it may have been signed * * * with all due solemnity. * * *

" 'It is true that no particular language or form is necessary to constitute a valid will, and that the surrounding circumstances are admissible to explain, in a proper case, the intention of the testator; but one may execute a paper with every formality known to the law and by it devise all his property, but, unless he intends that very paper to take effect as a will, it is no will.' "

After so quoting from the Supreme Court of Virginia, Judge Pierson further said: "To give the instrument the legal effect either of a will or of a revocation of former wills it must be written and signed with the present intention to make it a will or a revocation. Where the evidence is not conclusive of the existence or non-existence of such an intention, and where its existence or non-existence is to be deduced from all the facts and circumstances of the case, the issue must be determined by the jury."

The only case which has been called to our attention similar in point of fact to the circumstances here under consideration, that is, where the purported will was executed while the testator was being initiated into a secret society, is the case of Re Estate of Wm. H. Watkins, Deceased, 116 Wash. 190, 198 P. 721, 722, 17 A.L.R. 372, decided by the Supreme Court of Washington. In that case the fact issue of testamentary intent of the maker in executing the instrument was by the trial court found in favor of the proponent, admitting the instrument to probate. Three of the five judges of the Supreme Court, in passing upon an appeal of the case, were of the opinion that there was testimony in that case affirmatively showing testamentary intent on the part of Watkins at the time he executed the instrument, sufficient to support the trial court's finding. Two of the judges dissented from the opinion. The testimony referred to as showing testamentary intent on the part of Watkins consists of certain statements made by him to parties present at the time of executing the instrument, "that if he never made another will that one would do." Another witness testified that he said: "That it was his will; that he had signed it as his last will, his last will and testament." The dissenting judges were of the opinion that this testimony was not sufficient, as against the circumstances under which the instrument was executed, to support a finding of testamentary intent on the part of Watkins. There does not appear to have been any disagreement among the members of that court, but execution under such circumstances of a purported will, however correct in form, presented an issue of fact as to whether the testator intended the instrument to be his will. It appears to have been their opinion that a valid will may be made under such circumstances; but that, in addition to the form and language of the instrument, some affirmative evidence showing actual testamentary intent on the part of the maker was required to overcome the adverse inference arising from the circumstances. Speaking for a majority of the court, Judge Fullerton said:

"There would seem to be no legal objection to regarding a will so executed as a valid will. The time, place, or circumstances of the execution of an instrument in form testamentary are material only as they bear upon the question of intent. It is well settled, of course, that an instru-

ment offered for probate as a will, however formal may have been its execution, will not be admitted to probate as such unless it was executed by the testator with testamentary intent. If it is executed under compulsion, undue influence, as a part of a ceremonial, for the purpose of deception, or for the purpose of perpetrating a jest, it is not a will, but the fact that it was executed at a time when the testator was taking a degree in a secret order is not alone sufficient to reject it as a valid testamentary disposition of property. A valid will may be made under these circumstances as well as under any other. The question being one of intent, if it fairly appears that the testator intended it as his will, there is no valid legal reason because of the place of its execution why the courts should not give it effect as such.

"It remains to inquire whether the testator intended the instrument to be his will and testament. The evidence on the question is somewhat meager, but we think the decided weight of the evidence is that he so regarded it. * * *

"The question in each case must necessarily be, What was the intent of the particular individual?"

Judge Bridges, speaking for the minority, said: "I frankly concede that a valid will might be made under the circumstances this instrument was made, but certainly the testimony of the intention of the testator should be much stronger than is shown in this case, to authorize the probation of it as a final disposition of property."

█ It is our opinion that the time, place, and circumstances under which a will is executed are material only as they bear upon the question of testamentary intent. And that such intention may be presumed where the instrument on its face bears no evidence to the contrary and the surrounding circumstances under which it was executed do not becloud the purpose of the maker as will leave in doubt the question of whether he executed it with the intention that it be his will, or for some other purpose. In the present case, the testimony shows that Ernest Shiels protested against making a will, and stated that he did not want to make a will. It is true that he subsequently executed the instrument. But in doing so, what was his intention? Did he understand and so intend in its execution that the instrument would operate merely as a part of the ceremonial? Or did

he, rather than suffer dismissal from the class and be denied further initiation into the degrees, determine to execute the instrument with the intention that it operate merely as a formal compliance with the requirements of the order? Or did he execute it with the present intention that it be his last will and testament?

We think these questions are raised in the testimony of this case, and should have been determined by the jury from all the facts and circumstances in evidence.

We have examined the remaining assignments and propositions made by the appellant, but do not think they present error. For the reason above stated, the judgment of the trial court will be reversed and the cause remanded.