## THOMASON v. VEAL et al.
### No. 5194.

Court of Civil Appeals of Texas. Amarillo.
Oct. 7, 1940.

Rehearing Denied Nov. 4, 1940.

Allison & Gordon, of Levelland, and Crenshaw, Dupree & Milam, of Lubbock, for appellant.

H. S. Garrett, of Fort Worth, and Bradley & Wilson, of Lubbock, for appellee Texas Co.

Geo. S. Berry and Robert Howard, both of Lubbock, for appellees Geo. T. Veal and others.

STOKES, Justice.

This is an action of trespass to try title filed by appellant, Claude A. Thomason, against the appellees, George T. Veal and his wife, Minnie Slaughter Veal, R. L. Slaughter, Jr., and his wife, Sue Alice Slaughter, R. L. Slaughter, Jr. being the sole surviving heir at law of Bob Slaughter, deceased, and The Texas Company, a corporation, to recover the title and possession of tract No. 68 of the Bob Slaughter Block in Hockley County.

The Texas Company, on March 19, 1938, filed its original answer, and on March 22, 1939, it filed a suggestion of the absence of necessary parties in which it disclosed that various other persons were interested in the subject matter of the suit and that they owned and were vested with valuable and substantial rights, titles and interests in the land involved. The names and counties of the residence of eleven persons who it alleged to be such owners were set out and it alleged that like information with respect to other like parties could readily be obtained from the deed records of Hockley County. A hearing upon this suggestion of the absence of essential and necessary parties was held on the 19th of September, 1939, and at the conclusion of such hearing the court sustained the motion that it take no further action in the case than to order and require that appellant make parties to the suit all those who were interested in the unitized lease, which was the subject matter of the suit, and, therefore, necessary parties. The court indicated a willingness to continue the case in order to afford appellant time and opportunity to bring in such parties, but appellant declined to do so and the court thereupon dismissed the cause of action. Appellant duly excepted to the action of the

court in dismissing the case and has perfected an appeal therefrom.

The record shows that on the 14th of March, 1929, Bob Slaughter conveyed to appellant the north 80 acres of tract No. 68 in the Bob Slaughter Block in Hockley County, and, as part of the purchase price therefor, appellant executed a note in the sum of $480, to secure the payment of which he executed a deed of trust in which R. L. Slaughter, Jr., was named as the trustee. On the 7th of December, 1933, appellant purchased from George T. Veal and his wife, Minnie Slaughter Veal, the south 117.4 acres of tract No. 68 and, as part of the consideration, he executed ten notes in the sum of $259.56 each. To secure the payment of these latter notes appellant executed a deed of trust in which A. J. Richards was named as trustee. Upon default in the payment of some of the notes the original trustees in the deeds of trust resigned and A. D. Forehand was appointed substitute trustee in both deeds of trust. Appellant alleged that on the 3d of February, 1936, Forehand, as trustee, purported to sell the land under the power of sale contained in the deeds of trust and that appellees, George T. Veal and wife, Minnie Slaughter Veal, became the purchasers. Appellant alleged that the sale was void and the trustee's deed executed by Forehand after the sale, purporting to convey the land to the purchasers, was ineffective to pass the title because the trustee was not duly and legally appointed by the owners and holders of the notes; that no notices of the sale were posted as provided in the deeds of trust, and that Bob Slaughter, during his lifetime, acting for himself and on behalf of the holders of the notes, which he alleged had been acquired by other parties, made an agreement with appellant that the holders of the notes would accept in full payment thereof such an amount as would be loaned to appellant by the Federal Land Bank of Houston, and that he had made application for such loan, the land had been appraised, and the Federal Land Bank and Land Bank Commissioner had approved a loan in the total sum of $3,600.

The record further shows that, on the 26th of February, 1936, after purchasing the land at the trustee's sale, appellees, George T. Veal and his wife, Minnie Slaughter Veal, executed and delivered to appellee, The Texas Company, an oil and gas lease on Tract No. 68 and a number of other tracts in the Bob Slaughter Block in Hockley County, aggregating 2,025 acres. The lease was what is designated by the parties as a unitized lease, sometimes referred to as a community lease, and was one of a large number of similar leases procured by The Texas Company in the Bob Slaughter Block from the various owners comprising in the aggregate something over 6,000 acres, presumably in a solid block. In addition to the usual provisions of oil and gas leases, the lease in question contained the following provision: "It is agreed and covenanted that each lessor in said similar lease covering land in said unitized block will participate in the royalty herein provided from oil, gas or other minerals produced from this land if, when and as produced and sold, in the exact proportion as the individual royalty owner's interest in any tract bears to the aggregate number of acres still held by lessee, its successors or assigns under lease in the unitized block, at the time of production. For example: If at any time oil or gas or other minerals is produced from said land, this lessor or any other party executing a similar lease on land covered by said block to lessee herein should own a 100-acre royalty interest and lessee, its successors or assigns, holds under lease in the unitized block 6,000 acres, then the lessor herein or lessor in other leases shall be entitled to 100/6000ths of the one-eighth or other royalty provided for in this lease. For the purpose of operation and development it is intended that this lease and other similar leases upon land in the unitized block shall be treated as one lease."

Each of the other leases procured and held by The Texas Company contained the same provision, the effect of which, together with other provisions of the leases, was to invest all of the lessors with the right to participate in any royalty from oil or other minerals that may be produced by the lessee on any tract or tracts included in the unitized block. On account of this arrangement among all of the lessors, it is contended by the appellees that each and all of the others owned an interest in tract No. 68, the land sued for by appellants, and that they, therefore, were necessary and essential parties to appellant's suit.

The case is presented here upon a single assignment of error in which appellant asserts that the trial court erred in dismissing the cause of action for the reason that the other mineral and royalty owners in

the unitized block were not necessary or indispensable parties to the suit and if they were merely proper parties thereto, appellees had waived their right to complain of their nonjoinder by filing their answers to the merits of the case. Appellees, on the other hand, contend that the various lessors and other royalty holders in the unitized block are necessary parties to the suit because they have a direct interest in the land involved and such interest will necessarily be affected by any judgment that may be rendered. They contend, further, that, since the various lessors in the unitized block and others who had acquired royalty interests from them have a direct and material interest in tract No. 68 of the Bob Slaughter Block and in the rights, titles, estates and privileges granted by the lease on tract No. 68 and, since appellant seeks in his suit to annul and destroy such title and interest, the other lessors are necessary parties.

Considerable discussion is indulged in by both parties to the appeal of the question of whether or not the cause is an action of trespass to try title or a suit in equity to cancel the trustee's deed to Veal and wife and the oil and gas lease held by The Texas Company. The first portion of appellant's petition is in the ordinary form of trespass to try title. The second count sets out the facts which we have detailed concerning the purchase by appellant of the land involved, the deeds of trust and sale thereunder by the substitute trustee and allegations upon which appellant contends the trustee's sale and the deed executed by him to the purchasers are void. In the ninth paragraph of the petition, which immediately precedes the prayer, appellant alleges that all of the defendants are claiming some right, title and interest in and to all of the land, but that such interests are based upon the trustee's sale and are void and of no force or effect.

 We think it matters little whether the suit be denominated an action of trespass to try title or an equitable suit to cancel the trustee's deed and the oil and gas lease. Under the blended system of pleading prevailing in Texas, the allegations contained in the second count of the petition were proper even in an action of trespass to try title. Having made the allegations, appellant was under the duty of proving them and, regardless of what may be thought as to the technical nature or character of the action, the issues, under our system of pleading, are the same.

Getting down to the essence and controlling issue in the case, that is, whether or not the lessors and owners of land in the unitized block other than Veal and wife are necessary parties to the suit, it seems to be conceded by all parties that, if the effect of the provisions of the oil and gas lease executed by Veal and wife to The Texas Company was to invest such other lessors with an interest in the land here involved, the other owners and lessors are necessary parties to the suit.

 If these other owners procured an interest in Tract No. 68, it was through the provisions of the oil and gas lease. That instrument, in all of its features except the provisions for unitization, is in the form ordinarily in use in this jurisdiction. Its first clause provides that the lessor (whether one or more), in consideration of $1.00 in hand paid and of the covenants and agreements of the lessee, grants, leases and lets the land exclusively unto the lessee, for the purpose of testing by any method for formations or structures and prospecting and drilling for, mining, and producing oil and gas, laying pipe lines, building tanks, storing oil and water resulting from operations thereunder, and building powers, stations, etc., for the purpose of taking care of, treating and transporting oil and gas. The second clause makes provision for the term of the lease to extend and remain in force for ten years and as long thereafter as oil or gas is produced from the land. The third clause provides for the royalties that shall be paid to the lessor in the event of the discovery of oil or gas, and is to the effect that the lessor reserves, for the benefit of himself and other lessors executing similar leases in the unitized block, (a) on oil, one-eighth of that produced and saved from the land, the same to be delivered at the wells or to the credit of the lessor in the pipe line to which the wells may be connected. This clause provides, however, that the lessee may from time to time purchase such royalty oil, paying therefor the market price at the wells currently prevailing on the day it is run into the pipe line or storage tanks; and (b) on gas, including casing-head gas, produced from the land and sold or used off the land or in the manufacture of gasoline or other products, the market value at the wells of one-eighth of the gas so sold or used. It will be observed that the effect of this

clause is that the lessors, Veal and wife, reserve for the benefit of themselves and other lessors executing similar leases, one-eighth of the oil produced and saved from the land covered by their lease, that is, tract No. 68. It is well to note just here that the one-eighth of the oil produced and saved is not reserved to the lessor and the other lease holders, but to the lessor only, which reservation is for the benefit of the lessor and other lessors executing similar leases. The beneficial ownership of, or title to, the oil thus reserved, therefore, is not, by that provision of the lease, placed in the other lessors but is reserved to the lessors in this particular lease for the benefit of themselves and the other lessors. The benefit to the other lessors is not expressed in this clause of the lease and, therefore, other clauses therein must be looked to for its ascertainment. This third clause further provides that the entire one-eighth of the oil reserved shall be delivered at the wells or to the credit of the lessor in the pipe line to which the wells may be connected. These provisions of the lease impel the conclusion that if oil should be discovered on the land, the lessee must deliver one-eighth of it in kind to Veal and wife, either at the well or in a pipe line to which the well may be connected. When it is produced, therefore, according to the terms of the lease, the royalty oil still belongs to these lessors.

The manner in which the other lessors in the unitized block are to participate in the royalty thus produced and delivered to the lessors in this lease is provided in clause 4 (b) of the lease and is as follows: "The lessors named in this agreement and lease do agree with the owners and lessors of all the numbered tracts included in the unitized block of tracts, * * * that each lessor in said similar lease covering land in said unitized block will participate in the royalty herein provided from oil, gas or other minerals produced from this land if, when and as produced and sold."

Their interests are to be in the exact proportion as the individual royalty owner's interest in any tract bears to the aggregate number of acres still held by the lessee in the unitized block at the time of production.

■ From this analysis of the quoted portions of the lease it will be seen that the oil royalty is retained by Veal and wife and that the other lessors in the unit-

ized block are to participate therein only if produced and sold, as produced and sold, and when produced and sold. No dominion over the oil royalty itself, either while in place or after being produced, is at any time granted to or placed in any of the other lessors in the unitized block. Veal and wife reserved the actual commodity to themselves and they hold absolute title to it and dominion over it until it is sold. Then, and then only, do the rights of the other lessors accrue. The rights of the other lessors not accruing until after the oil has been sold by Veal and wife and after they have received the money or consideration therefor and passed title to the purchasers, it follows as a necessary sequence that the rights of the other lessors in the unitized block, according to the terms of the lease, can attach only to the money or consideration which is received by the lessors, Veal and wife, for the royalty oil. This impels the conclusion that the other lessors in the unitized block did not acquire any interest in the land by or through the terms of the oil and gas lease executed by Veal and wife.

■ It has many times been held by the courts of this State that those who are necessary parties to a suit are such persons as have or claim a direct interest in the object and subject matter of the suit and whose interests will necessarily be affected by any judgment that may be rendered therein. Such persons are not only proper parties but are necessary and indispensable parties, plaintiff or defendant. Cook v. Pollard, 70 Tex. 723, 8 S.W. 512; Fischer v. Rio Tire Co., Tex.Com.App., 65 S.W. 2d 751, 757.

In discussing this matter of necessary parties, the Supreme Court in the Fischer case said: "It is universally acknowledged that necessary or indispensable parties includes all persons who have an interest in the subject-matter of the suit, of such a nature that a final decree cannot be made without either affecting their interests or leaving the controversy in such condition that its final determination may be wholly inconsistent with equity and good conscience."

■■ It is settled in Texas by a number of eminent decisions that an oil royalty clause in a lease which provides that the royalty is payable in kind constitutes the reservation of an interest in land. Since the decision by our Supreme Court in the case of Stephens County v. Mid-

Kansas Oil & Gas Co., 113 Tex. 160, 254 S.W. 290, 29 A.L.R. 566, it has also been settled law in this State that the lessee in an oil and gas lease, by virtue of its provisions of lease, grant and sale, becomes the owner of a corporeal defeasible estate in the land and that his interest is taxable as real property. Hager v. Stakes, 116 Tex. 453, 294 S.W. 835; Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021; Davis v. Atlantic Oil Producing Co., 5 Cir., 87 F.2d 75; Cates v. Greene, Tex.Civ.App., 114 S.W.2d 592.

In Sheffield v. Hogg, supra [124 Tex. 290, 77 S.W.2d 1024], the Supreme Court said: "Sound principle, supported by the highest authority, goes further and compels us to accede to the proposition that dealing with oil and gas or dealing with solids in place, like sulphur, lignite, salt, coal, or lime, the lessor owning the entire fee-simple title to the land, and his assigns, who have been careful to secure to themselves * * * the right to a portion of the proceeds or profits derived from the lessee's * * * authorized sale of the minerals, throughout the duration of a determinable fee, * * * have and own a fee-simple interest in land, or at least have a right belonging or appertaining to the horizontal strata of the land in which the minerals are embedded [authorities omitted]. We therefore hold that all the property interests of ascertainable value, secured to the lessors or their assigns under the Hogg-Hamman lease, are subject to taxation as real estate in the county wherein the land lies, as adjudged by the district court."

The lease under consideration in the Sheffield case provided that the royalty on sulphur, if produced, should be $1.00 per ton produced and saved from the land and, in view of the quoted language of Justice Greenwood, considerable speculation has arisen over the question of whether or not the court intended to hold that an agreement in a lease whereby the lessee agrees to pay a stipulated sum of money for each unit of production, a possessory or corporeal estate in some portion of the mineral in place is retained. As we have stated, the lease under consideration in that case provided that the royalty on sulphur should be $1.00 per ton and the court held that all the property interests "of ascertainable value" secured to the lessors were subject to taxation as real property. The statement of the case does not reveal that any sulphur or other mineral, the royalty upon which was to be payable in money, had been discovered or was being produced, and it is not clear that the court intended to include in the term "ascertainable value" any of such minerals. If they had not been discovered and were not being produced, it could not have been known whether they were present in the land or not. If they were not present in the land or, if so, their presence was not known, then obviously they were not of ascertainable value. It cannot be said with certainty, therefore, that the court was considering royalties that were payable only in money. Moreover, it may be well to observe that the subject-matter of that suit was the potential values of minerals not yet produced and the question before the court was whether or not they were taxable as real estate.

Whatever may be the substance of the holding in the Sheffield and other cases, they do not, in our opinion, control the question involved in the instant case. Even if it must be said that the retention or reservation of royalties in oil production which consist of the value thereof after such royalties in kind have been produced and disposed of under power of sale given to the lessee in the lease are beneficial interests and corporeal possessory rights in land, which we do not concede is impelled by the expressions of the court in the Sheffield case, it would not necessarily follow that the other lessors in the unitized block involved in the instant case had, by the terms of the lease here being considered, procured an interest in tract No. 68 of the Slaughter Block. The lease here involved does not retain any oil, gas or other interests as the property of those other lessors. They had never owned, nor did they acquire any interest whatever in the corpus of the oil itself nor in any other minerals. The title to, and complete dominion over, the royalty portion of any such production was held and maintained at all times by the lessors, Veal and wife. It is true the provision is to the effect that they retained it for the benefit of themselves and the other lessors, but it was retained in them, nevertheless, and never transferred to, set over or vested in the other owners and lessors in the unitized block. The effect of the provisions of the lease is that the royalty, so long as it remained in its original state as oil, should belong to the lessors and be delivered to them at the wells or to their credit in the pipe lines to which the wells may be connected. Up to

and even beyond that point the other lessors had no interest therein. The lease provides that if, when and as the royalty portions of the products were produced and sold, and then only, should the other lessors in the unitized block participate in it. The conclusion is inescapable therefore that, whatever may have been held by the courts with reference to royalties in kind or in money being a portion of the real estate, it is certain that the lease here involved did not at any time invest the other lessors in the unitized block with any interest whatever in the lands leased to The Texas Company by appellees, Veal and wife.

What we have said demonstrates, we think, that the other lessors in the unitized block are not persons who have or can claim a direct interest in the object and subject matter of the suit nor that their interests would necessarily be affected by any judgment that may be rendered by the court in so far as the subject matter of the litigation is concerned. They are, therefore, not necessary parties to the litigation and it follows that, in our opinion, the court below erred in dismissing appellant's suit. The judgment will, therefore, be reversed and the cause remanded.