### No. 23771.

Court of Criminal Appeals of Texas.

June 11, 1947.

## MONTGOMERY v. WILLBANKS et al.

### No. 14839.

Court of Civil Appeals of Texas.
Fort Worth.

May 9, 1947.

Rehearing Denied June 6, 1947.

W. T. Powell, of Walters, Okl., and John P. Marrs and Carrigan, Hoffman & Carrigan, all of Wichita Falls, for appellant.

Arch Dawson, of Wichita Falls, for appellees.

McDONALD, Chief Justice.

In the year 1933 Mrs. Addie Dollar Bell, a resident of Wichita Falls, made a will leaving all her property to Baldwin Montgomery, who is the appellant on this appeal. For reasons set out in the opinion in Willbanks v. Montgomery, Tex.Civ. App., 189 S.W.2d 337, probate of that will was denied. As also shown in that opinion, certain heirs of Mrs. Bell sued Montgomery and obtained a judgment against him for the sum of $1,213.75, and sought to effect collection of the judgment by a levy of execution. On April 1, 1945, Montgomery discovered among Mrs. Bell's papers an instrument in writing bearing the date of March 18, 1942, purporting to be a will written in Mrs. Bell's own handwriting. Montgomery offered the 1942 will, as we shall sometimes refer to it for purposes of identification, for probate in the county court, and brought a suit in the district court to enjoin collection of the money judgment above referred to. The money judgment was predicated on an alleged ap-

propriation by Montgomery to his own use of money belonging to the estate of Mrs. Bell. By the terms of the 1942 will all of Mrs. Bell's property was left to Montgomery. The injunction suit was based on the theory that if the will should be probated, the legal effect would be to supersede or set aside the judgment against Montgomery for appropriation of the funds belonging to Mrs. Bell's estate. All of this is more fully discussed in our opinion reported in 189 S.W.2d 337, cited supra. As there shown, the district court issued a temporary injunction forbidding the threatened sale under execution, and we affirmed that order on appeal.

As has been said, Montgomery offered the 1942 will for probate in the county court. Probate of the will was opposed by those who are now appellees in this court on grounds which will later be shown. The will was ordered probated by the county Court, and an appeal was taken to the district court. On motion of those contesting probate of the will, the district court ordered that the probate appeal, and the injunction suit mentioned above, be tried together on one record. The two cases were tried together before a jury, and issues were submitted to the jury as hereinafter shown, but separate judgments were entered in the two cases, separate motions for new trial were filed and were overruled by separate orders, and separate appeal bonds were filed. A single transcript and a single statement of facts have been filed in this court, and for convenience have been filed here under one docket number, although the record in substance presents appeals from two separate judgments. Only one brief has been filed by each party, and we shall treat the matter as one appeal.

The trial court submitted eight special issues to the jury, which were answered favorably to the contestants. Judgment was rendered on the verdict in the probate matter, setting aside the order of the county court probating the will and decreeing that the 1942 will offered for probate was not a valid will, and ordering that the judgment be certified to the county court for observance. On the same day a judgment was entered in the injunction suit, dissolving the temporary injunction which had theretofore been issued, but ordering that if the case should be appealed the temporary injunction should remain in effect pending the appeal. Montgomery has appealed, relying on ten points of error.

Appellant first charges error in the action of the court below in ordering the probate appeal and the injunction suit tried together. Appellant cites such cases as Huston v. Cole, 139 Tex. 150, 162 S.W. 2d 404, which hold that on appeal from a probate order the district court is limited to the issues properly before the probate court. Those cases are not in point here. Rule 174, Texas Rules of Civil Procedure, authorizes consolidation, or joint hearing or trial, of actions involving a common question of law or fact. The trial court has great discretion in questions of joinder of parties and causes of action, and of consolidation or separation of causes of action, especially under this rule. Wilson v. Ammann & Jordan, Tex.Civ.App., 163 S.W.2d 660, writ dismissed, correct judgment. The courts exercise a broad discretion in such matters, and their action will not be disturbed except for abuse of discretion. Skirvin v. Mesta, 10 Cir., 141 F.2d 668. Practically the same contention which is made by appellant here was made in Williams v. Carter, Tex.Civ.App., 176 S.W.2d 580, writ refused for want of merit, and was overruled. We agree with the holding there announced. There is no lack of jurisdiction involved here, because the district court acquired jurisdiction of the issues presented in the two cases as they were filed, and did not lose jurisdiction simply because he ordered them tried together. We do not find any abuse of discretion on the part of the trial court. The alleged right to an injunction to restrain enforcement of the money judgment against Montgomery was based on the theory that Mrs. Bell had left all her property to Montgomery in the 1942 will, and that he could not, therefore, be held liable to the plaintiffs for appropriating funds that in fact belonged to himself. We do not see that any confusion necessarily would result from a trial of the two cases together.

854

The second point of error complains of the definition in the court's charge of the term "testamentary capacity". The complaint is that the definition was "so confusing that it prevented a fair finding on the part of the jury". Aside from the fact that no specific flaw in the definition is pointed out in the brief, the definition used received the express approval of the Supreme Court in the case of Prather v. McClelland, 76 Tex. 574, 13 S.W. 543, and so far as we can find has not been criticised in any subsequent opinion of our appellate courts.

▌ The third point of error is not briefed, and will therefore be treated as waived. If it were briefed, however, it would present no reversible error. It simply complains of the refusal of the trial court to submit a requested definition of "testamentary capacity" in lieu of the definition submitted by the court.

The fourth point of error raises in slightly different language the contention raised under the first point, and is overruled.

The fifth point of error does not require discussion, in view of our disposition of the ninth point.

Under the sixth point of error it is contended that there was no competent evidence justifying the submission of the sixth special issue, which reads as follows: "Do you find from a preponderance of the evidence that Mrs. Bell did not intend for the 1942 will to be a new will to take the place of the will written in 1933?"

As has been pointed out, Mrs. Bell made a will in 1933, wholly in her handwriting, which left all her property to Montgomery. In 1942, she wrote in her own handwriting the instrument which was offered for probate in the present proceeding. The latter instrument reads as follows:

."This is March 18 1942 and this is my will I want Baldin Montgomery to have everything that I have for he has taken care of me. I Addie D. Bell.

Mrs. W. P. Bell"

In Brackenridge v. Roberts, 114 Tex. 418, 267 S.W. 244, 246, rehearing denied, 114 Tex. 418, 270 S.W. 1001, it was declared to be a question of fact to be determined by the jury, as to whether the writing in question was intended by the testator to be his last will and testament, in view of the facts and circumstances presented by the record in that case. The essence of the inquiry there was whether the testator had merely written a note or memorandum looking toward the preparation of a will, or whether the instrument which he had prepared in his own handwriting was intended by him to be his last will and testament. To quote from the opinion: "To give the instrument the legal effect either of a will or of a revocation of former wills it must be written and signed with the present intention to make it a will or a revocation. Where the evidence is not conclusive of the existence or nonexistence of such an intention, and where its existence or nonexistence is to be deduced from all the facts and circumstances of the case, the issue must be determined by the jury."

The court also said: "It might be presumed that such a paper was intended to revoke a prior will and also to become a last will, if the instrument bears on its face no evidence to the contrary, and the circumstances surrounding its preparation do not impeach or contradict such intention. But to say that a penciled note, even though signed and in his handwriting, is a will, notwithstanding it was executed under circumstances that becloud its purpose as a testamentary declaration, and throw such doubts around it as that reasonable minds might conclude that he did not execute it as a will or as a revocation, is to carry that presumption far beyond reason."

The court quoted from the opinion in Clark v. Hugo, 130 Va. 99, 107 S.E. 730, 733, where it was held: "* * * one may execute a paper with every formality known to the law and by it devise all his property, but unless he intends that very paper to take effect as a will, it is no will."

The same rule was again announced in Langehennig v. Hohmann, 139 Tex. 452, 163 S.W.2d 402, 405, where it was said: "It is held further that an instrument is not a will, regardless of its correctness in form, unless the maker intended it to be a testamentary disposition of his property; that an instrument cannot be given the legal effect either of a will or of a revocation.

of a former will unless it was written and signed with the intention to make it a will or a revocation; and that testamentary intent on the part of the maker is a proper issue for determination in a proceeding to probate or in a contest of an application to probate."

■■ The jury, in response to the sixth special issue, answered that Mrs. Bell did not intend the 1942 writing to be a new will. In ascertaining whether there is evidence of probative value to support such a finding, we must examine the evidence in the light most favorable to the verdict. Viewed in such light, the evidence shows that Mrs. Bell made a will in 1933, leaving all her property to Montgomery, and that she discussed the will with Montgomery and other persons. She was in some doubt about the sufficiency of the 1933 will, so she consulted a lawyer about it. He advised her that the will was satisfactory in form, and she told Montgomery that she was satisfied with it. She and Montgomery then went together to the bank and put the will in her lock box. The 1933 will remained in her lock box until after her death. So far as the evidence shows, she did not at any time thereafter express to Montgomery any dissatisfaction with the will, and there is no evidence to indicate that she ever made any effort to take the will out of the lock box or destroy it. Montgomery took the 1933 will out of the lock box soon after her death, and offered it for probate. Mrs. Bell lived in a duplex house. There was also living in the house a Mrs. Melton, a friend of Mrs. Bell's. Early one morning, about a year before she died, which would have been about the date of the 1942 will, Mrs. Bell came into Mrs. Melton's apartment, appearing to be very much disturbed, and told Mrs. Melton that she had not slept much the night before because she had been worrying about whether she had made a will. Mrs. Bell had a piece of paper in her hand, and said to Mrs. Melton, "I just didn't sleep hardly any last night; I got to thinking about whether I had made my will or not; I got up this morning the first thing, and wrote this." She said to Mrs. Melton, "Honey, read this and see if it sounds all right." Mrs. Melton replied, "Mrs. Bell, you al-

ready have your will made. What are you worrying about it for?" Mrs. Bell said that she just got to thinking. Mrs. Melton said, "You have already made it." Mrs. Bell replied, "Oh, have I? I forgot." Mrs. Melton testified that Mrs. Bell still seemed disturbed, and that she then suggested that Mrs. Bell give the paper to Montgomery. Appellant points out that Mrs. Melton did not identify the will offered for probate as being the same paper which Mrs. Bell showed her on the morning in question, but we think, in view of all the facts and circumstances shown by the evidence, that it is not an unreasonable deduction that the paper which Mrs. Melton testified about was the will which was offered for probate in this proceeding. Mrs. Melton never saw the paper again, and testified that Mrs. Bell never discussed the matter of a will with her again, saying that Mrs. Bell's mind was at ease from there on. Mrs. Melton knew that Mrs. Bell had a lock box at the bank, but did not know what she did with the paper just mentioned. For some years Montgomery had acted as a confidential adviser to Mrs. Bell, had access to her lock box at the bank, and had looked after her business for her. He took possession of her papers and her property at her death. He knew nothing of the 1942 will until some two or three years after Mrs. Bell's death, when he found it among some of her belongings. There is evidence to show that Mrs. Bell had grown forgetful during her last years. The evidence, viewed in the light most favorable to the jury finding, indicates that Mrs. Bell momentarily had forgotten about the 1933 will, that she wrote the 1942 document and showed it to Mrs. Melton for the purpose of asking her if it was all right, and that when Mrs. Melton reminded her that she already had a will, she laid it aside with no intention that it should become a new will superseding the 1933 will, which had made the same disposition of her property. The record suggests no other reason for the writing of the 1942 will.

■ One of the contestants was Mrs. Ida Willbanks, a sister of the deceased. Error is claimed under the seventh point in the admission of testimony by Mrs. Willbanks concerning her needy circum-

stances. The testimony was admissible. One of the grounds alleged for contesting the will was that Montgomery had induced Mrs. Bell to execute it by promising her that he would take care of Mrs. Willbanks if Mrs. Bell would leave him all of her property, and that he did not intend to perform the promise when he made it. Montgomery testified that he had told Mrs. Bell in 1937 or 1938 that he would do as much for Mrs. Willbanks as Mrs. Bell would, and that he was ready to do so "when the occasion arises", or if "she ever needed it". It was after such testimony was offered by Montgomery that Mrs. Willbanks testified concerning her needy circumstances. On the issue of the fraudulent promise, Montgomery took the position that he was willing to perform the promise, and had not done so because Mrs. Willbanks had not needed help. Mrs. Willbanks' testimony was admissible in rebuttal. Also, the testimony was admissible on the question whether the will was a natural one for Mrs. Bell to make. On the issues of fraud and of testamentary capacity it was proper to consider whether the will was a natural one under the circumstances, and it would thus be proper to inquire whether the sister of the testator was a person of wealth or poverty. 44 Tex.Jur., p. 607.

■ The first special issue inquired as to Mrs. Bell's testamentary capacity. The eighth point of error raises the question whether there is evidence of probative value to support the finding of the jury that she did not have testamentary capacity to make the 1942 will. It is doubtful if there has been a sufficient compliance with the rules of briefing to require consideration of this point. But if we treat the question as properly briefed, we come to the conclusion that there is some evidence to support the verdict, although the evidence is rather weak. The mere fact that she made the 1942 will in apparent forgetfulness of the fact that in 1933 she had made a will providing for the same disposition of her property, is itself some evidence of a lack of testamentary capacity at the later date. As usually happens in cases of this nature, witnesses differed in their appraisals of Mrs. Bell's mental condition and it would serve no good purpose especially to detail here all the testimony bearing on the matter. We have carefully studied the evidence, and are of opinion that we would not be justified in holding that there is no evidence of probative value in support of the verdict.

■ One of the grounds upon which the 1942 will was attacked was that Montgomery had induced Mrs. Bell to leave him all her property by promising her that he would take care of Mrs. Willbanks, a sister of the testatrix, and that Montgomery had no intention of performing the promise at the time it was made. In response to special issues the jury found that Montgomery made such a promise, that Mrs. Bell relied on the promise in making the 1942 will, and that Montgomery did not intend to perform the promise when it was made. Under the ninth point it is claimed that the evidence does not support these findings. We sustain this contention. The only evidence bearing on the matter is that in 1937 or 1938 Montgomery discussed the 1933 will with Mrs. Bell, and asked her if she did not think she should leave something to Mrs. Willbanks; that Mrs. Bell replied, saying, "No, I made it just like I wanted it, I think if Ida needed anything you probably would do as much for her as I would." Montgomery told her that he would do so. There is nothing to indicate that either of the parties contemplated the making of another will at that time, or that Mrs. Bell had suggested any intention of changing the 1933 will. A will may be attacked in a proper case on the ground that its execution was induced by a fraudulent promise to do something in the future. Morrison v. Thoman, 99 Tex. 248, 89 S.W. 409. But there must be some proof that the promise was fraudulent, and that the testator made the will in reliance on the false promise. When Montgomery made the promise, if it could properly be called a promise, he knew that Mrs. Bell long before had made a will leaving everything to him, and, as we have said, there is simply nothing in the evidence to show that the promise was made by Montgomery for the purpose of inducing her to make another will to the same effect, nor is there:

any evidence even remotely suggesting that the 1942 will was made by Mrs. Bell in reliance on the promise to take care of Mrs. Willbanks. We find no evidence of fraud on Montgomery's part in connection with the writing of the 1942 will.

The tenth point of error complains of a remark of appellees' counsel made in his argument to the jury. No objection was made to the remark at the time, nor was the court asked to instruct the jury not to consider it. It was not such character of argument as would constitute reversible error in the absence of objection thereto at the time it was made.

The judgment of the trial court is affirmed.