**SIMMONS v. WILSON et al.**

No. 2824.

Court of Civil Appeals of Texas. Waco.

Jan. 6, 1949.

Kemp, Lewright, Dyer & Sorrell, of Corpus Christi, Thompson, Knight, Harris, Wright & Weisberg, of Dallas, and Gus L. Kowalski, of Kingsville, for appellant.

Tarlton, Ogden & Hale, of Corpus Christi, Walter Koch, of Austin, Graves & Graves, of Houston, James M. Easterling, of Corpus Christi, and Ralph B. Shank, of Dallas, for appellees.

HALE, Justice.

This suit is based upon an accounting under a constructive trust. It involves certain overriding royalty interests asserted in and to a mineral leasehold estate covering 160 acres of oil producing land designated as Survey No. 43 in Kleberg County, Texas. Appellant, Jay Simmons, is the legal holder of the leasehold in controversy and as such is alleged to be the equitable trustee for the benefit of appellees under the asserted trust.

The suit was originally instituted on June 15, 1945, by appellees H. A. Potter, Wm. E. Ramsey, Woodie Craig and Guy I. Warren (hereafter referred to as Potter et al.) against appellant. Thereafter, appellees N. G. Landrum, John L. Cottingham, Mrs. Hayden Tucker, surviving wife of C. R. Tucker, and others (hereafter referred to as Landrum et al.), joined by Sam E. Wilson, Jr. and S. E. W. Oil Corporation (hereafter referred to sometimes as the Corporation), instituted their suit against appellant. On January 6, 1947, after John W. Rawlinson and wife, his brother and sister (hereafter referred to as the Rawlinsons) and others had become parties to the proceedings, the court below ordered a consolidation of the two suits.

The consolidated suit was tried before a jury. Upon the conclusion of the evidence Potter et al., Landrum et al., Wilson and the Corporation severally moved the court for a peremptory instruction in their favor

against appellant. Each of these motions was overruled. The case was then submitted to a jury on certain special issues but the jury was unable to agree upon answers to some of the issues so submitted and was discharged. Thereupon, Potter et. al., Landrum et al., Wilson and the Corporation severally moved for judgment in their favor against appellant on the undisputed evidence. The court overruled the motions of Wilson and the Corporation for judgment in their favor, severed the causes of action asserted by them from the causes of action asserted by the other complaining parties, granted the motions of Potter et al., and of Landrum et al., for judgment in their favor against appellant on the undisputed evidence and rendered judgment accordingly.

Under appropriate points in his brief, appellant says in effect that the trial court erred (1) in severing the causes of action asserted against him by Wilson and the Corporation from the causes of action asserted against him by appellees and (2) in rendering judgment against him in favor of appellees after severance.

The undisputed evidence shows that appellant produced a total of 285,007 barrels of oil from the leased premises during the period from August 11, 1945 to July 31, 1947, which was of the total value of $466,553.22. These totals were broken down so as to show the amount and value of the oil produced and sold during each month in the period of time covered. The undisputed evidence further shows that the overriding royalty interests of appellees, if any, in the leasehold estate are held as follows: by Landrum et al. an undivided 1/16 of the total production; and by Potter et al. an undivided 1/8 of 7/8 of the total production.

The trial court rendered judgment on February 27, 1948, establishing the respective overriding royalty interests asserted by appellees in the leasehold estate, awarding recovery to Landrum et al. in the proportions of their several interests for the total sum of $29,159.57 and awarding recovery to Potter et al. in the proportions of their several interests for the total sum

of $51,029.26, together with interest on each of such sums at the rate of six per cent per annum from the date of the judgment until paid. Potter and his associates excepted to the judgment and gave notice of appeal therefrom in so far as the same did not allow them any interest as damages on their respective shares of the oil produced during the period of time from August of 1945 to July of 1947 and under an appropriate cross-point in their brief they say the court below erred in refusing to allow them any recovery for such interest as damages.

It thus appears to us that the appeal presents three ultimate questions of law for decision, viz: Were the facts established by the undisputed evidence in the court below sufficient to impress appellant's leasehold estate in Survey No. 43 with a constructive trust for the benefit of appellees? If so, did the trial court err in severing the causes of action asserted by Wilson and the Corporation from the causes of action asserted by appellees? And, if not, were Potter and associates entitled to recover interest as damages on their claims against appellant? .

■ The basic theory out of which a constructive trust arises is stated in 26 R. C. L. 1236 as follows: "It is a well settled general rule that if one person obtains the legal title to property, not only by fraud, or by violation of confidence of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

■ Constructive trusts are purely creatures of equity. Their forms and varieties are practically without limit. Their classification is dependent upon the circumstances surrounding the acquisition of the legal title to property in each particular case. Being remedial in character, however, their broad function in all of

their varied forms and classifications is to redress wrong or unjust enrichment, in keeping with established principles of equity and justice. Tex. Jur. vol. 42, p. 649, Secs. 45–47; Am. Jur. Vol. 54, p. 167, Sec. 218; C. J., Vol. 65, p. 454, Sec. 215; Restatement of the Law of Trusts, Part I, pp. 5–6; 3 Bogert on Trusts and Trustees, § 471; Pomeroy's Eq. Jur., (5th Ed.) Vol. 1, p. 209, Sec. 155; 1 Perry on Trusts, (6th Ed.) Par. 186.

The leased premises here in controversy are surrounded by a large body of land known as the King Ranch, formerly owned by Robt. J. Kleberg. On November 13, 1896, Robt. J. Kleberg executed a deed to Wm. and Ida Rawlinson by the terms of which he purported to convey to them 160 acres of land, more or less, in Kleberg County, Texas, designated as Survey No. 44. However, the grantees did not enter into possession of Survey No. 44 but they did immediately take possession of Survey No. 43, containing 160 acres adjoining Survey No. 44. Ever since that time Wm. and Ida Rawlinson and their heirs have had possession of Survey No. 43, claiming the same as their own, and Robt. J. Kleberg and his successors in title have had possession of Survey No. 44, claiming the same as their own.

Prior to 1940 the King Ranch, a corporation, had granted a mineral lease to Humble Oil & Refining Company, hereafter referred to as the "Humble", covering its lands in Kleberg County. Among the lands specifically described in this lease was the tract designated as Survey No. 43, then in possession of the Rawlinsons as heirs of Wm. and Ida Rawlinson, but it did not specifically include Survey No. 44.

On February 21, 1940, the Rawlinsons executed an "unless" oil and gas lease in usual form to Chas. F. Heman and Woodie Craig, hereafter referred to as the "H-C Lease", covering 160 acres of land designated as Survey No. 44 in Kleberg County. Following the description of the land covered in this lease was the following language: "This lease also covers and includes all of the land owned or claimed by Lessor adjacent or contiguous to the land particularly described above, whether the same be in said survey or section or in adjacent surveys or sections, although not included within the boundaries of the land particularly described above." The primary term of this lease was for five years. In addition to the usual 1/8 royalty provision contained in the lease, a cash bonus of $800.00 was paid by lessees for the same. The lease also provided for delay rentals, in the absence of drilling operations, of $800.00 to be paid at the expiration of six months after its date, $800.00 at the expiration of twelve months, and $800.00 at the end of each year thereafter throughout the remainder of the primary term.

Simultaneously with the delivery of the H-C lease and as a part of the same transaction the lessees therein executed and delivered to the Rawlinsons a separate instrument, hereafter referred to as the "Water Well Agreement", by the terms of which lessees obligated themselves to drill a water well upon the leased premises to a depth of 475 feet and to drill a well for oil to a depth of 7,000 feet. The leased premises were therein referred to as 160 acres in Kleberg County, Texas, "same being known as the old Rawlinson homestead."

The H-C lease was thereafter assigned from its respective owners by successive written instruments dated as follows: (1) on March 8, 1940, to H. A. Potter, Inc.; (2) on June 28, 1940, to S. E. W. Oil Corporation; (3) on August 8, 1940, an undivided 1/4 interest therein to N. G. Landrum; (4) on August 8, 1940, an undivided 1/4 interest therein to C. R. Tucker and J. L. Cottingham, doing business as I. Reinhart & Son; and (5) on November 24, 1941, to Jay Simmons.

By the terms of the assignment from H. A. Potter, Inc. to S. E. W. Oil Corporation under date of June 28, 1940, the assignor retained as overriding royalty an undivided 1/8 of 7/8 of all the oil to be produced under the H-C lease; the assignee therein agreed to commence the drilling of a test well on the leased premises by

August 21, 1940, and to continue the drilling thereof to a depth of 7000 ft. unless oil or gas should be obtained at a lesser depth; and assignee further agreed that if the well was not commenced by August 21, 1940, it would pay delay rentals to lessors so as to continue the lease in effect and would in all events proceed with the drilling of an exploratory well within the primary term of the lease as maintained in force by the payment of delay rentals.

By the terms of the joint assignment from S. E. W. Oil Corporation, Landrum, Tucker and Cottingham to Jay Simmons, dated November 24, 1941, the assignors retained as overriding royalty an undivided ⅛ of all the oil to be produced under the H-C lease, ½ of such overriding royalty interest to be vested in the Corporation, ¼ thereof to be vested in Landrum and ¼ in Tucker and Cottingham. This assignment specifically referred to each of the prior assignments of the H-C lease and expressly provided that it was subject to all the terms, provisions, reservations and exceptions contained in such prior assignments. Jay Simmons agreed verbally with Sam E. Wilson, Jr., President of S. E. W. Oil Corporation, as consideration for this assignment to him, that he would begin the drilling of an exploratory well upon the leased premises either within sixty days or within a reasonable time after the date of the assignment, or would return the assignment to the assignors unrecorded, or would reassign the lease to them.

The overriding royalty interest retained by H. A. Potter, Inc. under its assignment of the H-C lease to S. E. W. Oil Corporation was thereafter duly sold and assigned by H. A. Potter, Inc. to Potter et al. in the varying proportions asserted by them, respectively, in this suit. The overriding royalty interest vested in Tucker under the assignment of the H-C lease to appellant later passed to the estate of Tucker.

Appellant was preparing to begin drilling operations on the Rawlinson homestead tract under the H-C lease when on December 20, 1941, he was advised by representatives of the King Ranch and the Humble that the latter had made an extensive survey of the properties covered in its mineral lease from the King Ranch and had ascertained therefrom that the Rawlinson homestead was situated on Survey No. 43 and not on Survey No. 44. Thereupon, appellant secured a mineral lease from the Rawlinsons dated December 21, 1941 covering the 160 acres in Kleberg County which they and their parents had been occupying "for more than 40 years". Appellant advised Wilson of the material facts he had discovered and of the lease he had taken from the Rawlinsons. S. E. W. Oil Corporation had paid the delay rentals of $800.00 under the H-C lease on August 21, 1940 and on February 21, 1941 but the delay rental of $800.00 was not paid to the Rawlinsons on February 21, 1942.

Appellant then negotiated with the Rawlinsons for two mineral leases, paying a cash bonus of $800.00 for the same, one dated February 25, 1942, covering Survey No. 43, which provided for an annual delay rental of $640, and the other, dated February 26, 1942, covering Survey No. 44 which provided for an annual delay rental of $800.00. Appellant and Wilson then entered into a verbal agreement by the terms of which they agreed to reinstate the overriding royalty interests under the H-C lease on Survey No. 44 and to own jointly the working interest under both leases from the Rawlinsons to appellant covering Surveys No. 43 and No. 44. None of the appellees was in any wise a party to this partnership agreement between appellant and Wilson and they each refused to accept or to ratify such agreement after the same had been called to their attention. On February 25, 1943 appellant took another mineral lease from the Rawlinsons covering Survey No. 43, paying a cash bonus of $800.00 for the same, but neither he nor Wilson or the Corporation paid any delay rental under the leases from the Rawlinsons to appellant dated February 25th and 26th of 1942 covering Surveys Nos. 43 and 44, respectively.

As a result of negotiations between appellant, the Rawlinsons, the King Ranch and the Humble, an agreement was reach-

ed sometime prior to September 20, 1943. Under the terms of this agreement the King Ranch deeded Survey No. 43 to the Rawlinsons and the Rawlinsons deeded Survey No. 44 to the King Ranch; the King Ranch substituted Survey No. 44 for Survey No. 43 in its lease to the Humble and the Humble released Survey No. 43 from the coverage in its lease from the King Ranch; appellant released the H-C lease covering Survey No. 44 and the February 25, 1942 lease covering Survey No. 43 and the Rawlinsons executed a new mineral lease in usual form to appellant dated December 21, 1943, covering Survey No. 43. After the last of these instruments had been filed for record, appellant began the drilling of an oil well on Survey No. 43 which resulted in a producer, and he had brought in 4 producing wells on said Survey No. 43 prior to the time of the trial.

The evidence before us is voluminous and complicated. Although the verbal testimony was in some respects conflicting, we think the controlling facts, in so far as the rights and liabilities of appellees and appellant are concerned, were established by cumulative evidence, documentary and parol, that is without any dispute. In our opinion, reasonable minds could not differ in concluding from the evidence as a whole that it was the mutual intention of the Rawlinsons as lessors and of Heman and Craig as lessees, in the execution and delivery of the H-C lease, thereby to cover the 160 acres of land in Kleberg County which the Rawlinsons and their parents had been occupying and claiming since the year 1896. Each assignee of the H-C lease, including appellant, had access to the "water well agreement" at the time each acquired the lease and each believed that the leasehold estate thus acquired covered the 160 acres known as the old Rawlinson homestead. Neither the lessors nor the lessees or any of the assignees in and under the H-C lease knew or was in any manner advised prior to December 20, 1941 that the Rawlinson homestead was actually situated on the 160 acres of land designated as Survey No. 43. At all times from February 21, 1940 to September 20, 1943

oil was being produced nearer to the Rawlinson homestead tract than to the 160 acres actually contained in Survey No. 44.

Appellant says the evidence was not sufficient to establish as a matter of law that any fiduciary relationship ever existed between him and any of the appellees concerning any of the properties here involved. While we do not agree with this contention. we think the same is immaterial because, in our opinion, the existence of a fiduciary relation between appellant and appellees was not a necessary prerequisite to the establishment of a constructive trust upon the leasehold estate covering Survey No. 43 for the benefit of appellees. Since such a trust arises solely by construction of equity, it is entirely independent of any actual or presumed agreement or intention of the parties at interest and may be contrary thereto. Lipsitz v. First Nat. Bank of Gordon, Tex.Com.App., 293 S.W. 563; Texas Creosoting Co. v. Hartburg Lumber Co., Tex.Com.App., 12 S.W.2d 169; Spencer et al. v. Pettit, Tex. Civ.App., 17 S.W.2d 1102; Id., Tex.Com. App., 34 S.W.2d 798.

Equity relieves against the unjust consequences of accident and mistake, as well as of fraud. Not only so, but in the discharge of its duty and exercise of power to do justice between parties to a transaction or series of events, irrespective of how complicated the same may be, a court of chancery rejects all shades of sophistry and subterfuge as it seeks to ascertain and give effect to true intent and meaning. It considers substance rather than form. It regards as done that which under existing circumstances ought to be done, thereby giving rise to equitable as distinguished from purely legal property rights, estates and interests. Am.Jur.Vol. 19, p. 316; Camp v. Boyd, 229 U.S. 530, 33 S.Ct. 785, 57 L.Ed. 1317; Williamson v. Krohn, 6 Cir., 66 F. 655; Lacy v. State Banking Board, 118 Tex. 91, 11 S.W.2d 496; Tyler v. Bauguss, Tex.Civ.App., 148 S.W.2d 912 (er. den. c. j.); Gaines v. Lee, Tex.Civ.App., 175 S.W.2d 728 (er. den. w. m.).

Under the undisputed evidence in this case there can be no doubt that the designation of the 160 acres covered in the H-C lease, and in each subsequent assignment thereof, as being Survey No. 44, was the result of a mutual mistake between the parties thereto. They each intended thereby to deal with the 160 acre tract constituting the old Rawlinson homestead. We must assume that when appellant acquired the H-C lease he intended either to drill an exploratory well on the Rawlinson homestead tract for the benefit of himself and of the lessors and assignors thereof or to return the assignment to the assignors or to reassign the lease to them, as he expressly agreed to do. Having thereafter discovered the mistake in the designation of the leased premises and having in practical effect corrected the same so as to conform with the true intention of the parties in so far as he and the Rawlinsons were concerned, we think appellant, in all good conscience, ought to have reinstated the equitable overriding royalty interests held by appellees on Survey No. 43, rather than to have offered them a reinstatement thereof on Survey No. 44. To permit him now under the prevailing circumstances to retain $7/8$ of all the oil produced from Survey No. 43, free of any overriding royalty interest of appellees, would not only result in failure to relieve innocent and diligent parties against the unjust consequences of mistake but would also result in appellant's unjust enrichment to the corresponding detriment of appellees in derogation of their just rights and interests.

Upon the entire record before us, we hold that the facts established by the undisputed evidence were sufficient to impress appellant's leasehold estate in Survey No. 43 with a constructive trust for the benefit of appellees as the equitable owners of overriding royalty interests therein to the extent and in the proportions decreed by the court below. Hand v. Errington, Tex.Com.App., 242 S.W. 722; Hill v. Stampfli, Tex.Com.App., 290 S.W. 522; Moore v. Marland Oil Co., Tex.Com.App., 7 S.W.2d 59; Hall v. Miller, Tex.Civ.App.,

147 S.W.2d 266 (er. dis. c. j.); Pounds v. Jenkins, Tex.Civ.App., 157 S.W.2d 173; Kirkland v. Handrick, Tex.Civ.App., 173 S. W.2d 735 (er. ref. w. m.); Snyder v. Citizens State Bank, Tex.Civ.App., 184 S. W.2d 684, 687; Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471; Drury v. Cross, 7 Wall., U.S., 299, 19 L.Ed. 40; Hivick v. Urschel, 171 Okl. 17, 40 P.2d 1077; Johnson v. Bellmont, 172 Ark. 851, 291 S.W. 77; Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1.

We next consider the question of severance. Pertinent thereto appellant says, among other things, that the order of severance followed by the rendition of a purported final judgment against him in favor of appellees was erroneous because Wilson and the Corporation were necessary parties to the claims, demands and causes of action asserted against him by appellees. He contends that all claimants adverse to him in the consolidated suit were necessary parties thereto because the rights asserted by each arose out of the same transaction or transactions and the relief sought by each was wholly equitable, in that each sought to impress a trust upon the leasehold estate owned by him on Survey No. 43.

Necessary parties to a suit are those indispensable to an adjudication of the controversy in dispute and without whom the court will not proceed to any judgment or decree, even as between adverse parties properly before the court. Included therein are all persons who have an interest in the controversy "of such a nature that a final decree cannot be made without either affecting their interests or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." 30 C.J.S., Equity, § 142, p. 573. Conversely, unless a person does have an interest of such a nature in the subject matter of the controversy in suit, he is not ordinarily a necessary party even though he may be a proper party thereto. Biggs v. Miller, Tex.Civ.App., 147 S.W. 632; Bingham v. Graham, Tex.Civ.App., 220 S.

W. 105; Wilson v. Reeves County Water Improvement Dist. No. 1, Tex.Civ.App., 256 S.W. 346; Bishop v. Sanford, Tex. Civ.App., 35 S.W.2d 800 (er. dis.); Thomason v. Veal, Tex.Civ.App., 144 S.W.2d 361; Id., 138 Tex. 341, 159 S.W.2d 472; Brown v. Meyers, Tex.Civ.App., 163 S.W. 2d 886 (er. ref.).

In the consolidated suit Landrum et al., Wilson and the Corporation were plaintiffs, appellant and the Rawlinsons were defendants and Potter et al. were defendants and cross plaintiffs against appellant. Landrum et al., the Corporation and Potter et al. set forth in their pleadings the substance of the material facts relating to their asserted overriding royalty interests and each sought a separate recovery against appellant for the value of his proportionate interest in the oil which appellant had produced and sold. Wilson did not assert any overriding royalty interest under the leasehold estate in controversy, his asserted rights against appellant being restricted to his claim of a working interest in the lease, subject to the overriding royalty interests of appellees and the Corporation. Neither did he or the Corporation make any claim or demand in the suit for any affirmative relief against any of the appellees, nor did any of the appellees seek any affirmative relief against either of them. In fact, there was no controversy whatsoever, under the pleadings or the evidence, as between Wilson, the Corporation and appellees. Wilson owned practically all of the stock in the Corporation and as its President he conducted all of its negotiations with appellant. After hearing the conflicting testimony adduced on the issues in controversy between Wilson, the Corporation and appellant, the trial court concluded that neither Wilson nor the Corporation was entitled on the undisputed evidence to relief against appellant and that in furtherance of convenience and to avoid prejudice resulting from delay the issues in controversy between Wilson, the Corporation and appellant should be severed from the controversy between appellees and appellant.

 Rule 41, Texas Rules Civil Procedure, provides that: "Parties may be dropped or added, or suits filed separately may be consolidated, or actions which have been improperly joined may be severed and each ground of recovery improperly joined may be docketed as a separate suit between the same parties, by order of the court on motion of any party or on its own initiative at any stage of the action, before the time of submission to the jury or to the court if trial is without a jury, on such terms as are just. Any claim against a party may be severed and proceeded with separately." Rule 174 (b), Texas Rules of Civil Procedure provides that: "The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues." These and other related Rules of Civil Procedure—Nos. 1, 40 and 97(h)— adopted by the Supreme Court within the past decade now vest in the trial courts of this state broad discretionary powers in regard to the joinder of parties and the consolidation and severance of actions. Wilson v. Ammann and Jordan, Tex.Civ. App., 163 S.W.2d 660 (er. den. c. j.); Montgomery v. Willbanks, Tex.Civ.App. 202 S.W.2d 851 (er. ref. n. r. e. c. j.); Paul v. Houston Oil Co. of Tex., Tex.Civ. App., 211 S.W.2d 345 (er. ref. n. r. e.).

 Although the equitable rights asserted by each claimant in the consolidated suit grew out of the same series of related events, we do not think the several claims therein declared upon constituted a single or indivisible cause of action against appellant. On the contrary, it appears to us that the controverted issues between Wilson, the Corporation and appellant on the one hand were severable from the issues in controversy between appellees and appellant on the other hand. We see no impelling or valid reason why the decree which has been rendered in disposing of the controversy between appellees and appellant should affect the interests of Wilson or the Corporation in their controversy with appellant or should leave their controversy with him in such a condition that

its final termination may be inconsistent with equity, good conscience or convenience. Consequently, we cannot say that Wilson or the Corporation was a necessary party to the causes of action asserted by appellees against appellant, or that the trial court abused its discretion in severing their asserted actions from those asserted and established by appellees. Boone v. Hulsey, 71 Tex. 176, 9 S.W. 531; Levy v. Roper, 113 Tex. 356, 256 S.W. 251; Shamburger v. Glenn, Tex.Civ.App., 255 S.W. 815; Rose v. Baker, 143 Tex. 202, 183 S.W.2d 438; Slay v. Burnett Trust, 143 Tex. 621, 187 S.W.2d 377.

Finally, then, were Potter and his associates entitled under the pleadings and evidence to recover interest as damages on their claims? Since appellant has not filed any reply to the brief submitted on behalf of Potter et al. we do not know what his views may be in regard to this question.

■■■■ The purpose·of awarding interest as damages is to compensate an aggrieved party for the detention of money rightfully due him. The courts of this State have repeatedly held that where damages, whether described as arising ex contractu or ex delicto, are established as of a definite time, and the amount is determined by fixed rules of evidence and known standards of value, interest is recoverable from the date of the accrual of the cause of action as just compensation for the wrongful detention of the sum or sums thus due. Tex.Jur.Vol. 13, p. 253, Sec. 142 and authorities; Western Union Telegraph Co. v. Eckhardt, Tex.Civ.App., 2 S.W.2d 505, pt. 10 and authorities.

Potter and his associates alleged in their trial pleadings that appellant had appropriated and converted to his own use and had wrongfully detained from them their combined overriding royalty interests in the leasehold estate to their damage in the sum of $60,000.00. They prayed that they have judgment against him establishing their interests in the leasehold estate, for their damages, and for such other relief, general and special, to which they might be entitled either at law or in equity. The undisputed evidence showed the exact amount and value of the oil produced and sold by appellant during each month from August of 1945, to and including July of 1947. The value of the combined overriding royalty interests of Potter et al. therein (which appellant received and detained in the total aggregate sum of $51,-029.26) was owned as follows: by Potter, $42,524.35; by Ramsey, $2,126.23; by Craig, $4,252.45; and by Warren, $2,126.-23. The judgment of the trial court in favor of Potter et al. was for these several sums. Interest on these sums at the rate of six per cent per annum from the time when appellant came into possession of the same until February 27, 1948, was as follows: $2,218.40, $110.98, $221.84, and $110.92, respectively.

■■■■ Under the record before us we hold that Potter and his associates were entitled as a matter of law to recover sums equal to the foregoing items of interest as elements of their asserted damages and that the trial court erred in failing to include the same in the several amounts awarded to them against appellant. Fort Worth & D. C. Ry. Co. v. Greathouse, 82 Tex. 104, 17 S.W. 834; Watkins v. Junker, 90 Tex. 584, 588, 40 S.W. 11; Wiess v. Gordon, Tex.Civ.App., 209 S.W. 486; San Antonio & A. P. Ry. Co. v. Collins, Tex.Com.App., 61 S.W.2d 84; Taylor-Link Oil Co. v. Anderson, Tex. Civ.App., 92 S.W.2d 499; Humble Oil & Refining Co. v. State et al., Tex.Civ.App., 162 S.W.2d 119 (er. ref.).

Therefore, we conclude that all of appellant's points of error should be overruled; that the cross-point of Potter et al. should be sustained and in pursuance thereof the judgment of the trial court should be reformed so as to award recoveries against appellant in favor of H. A. Potter for the sum of $44,742.75, in favor of Wm. E. Ramsey for the sum of $2,-237.15, in favor of Woodie Craig for the sum of $4,474.29, and in favor of Guy I. Warren for the sum of $2,237.15, together with interest on each of such sums at the

rate of six per cent per annum from February 27, 1948, until paid; and that the judgment of the court below as so reformed should be in all other respects affirmed. It is accordingly so ordered.

Reformed and affirmed.